**DYNES CORPORATION et al., Appellants,**

v.

**SEIKEL, KOLY & COMPANY, INC. et al., Appellees.**

[Cite as *Dynes Corp. v. Seikel, Koly & Co., Inc.* (1994), 100 Ohio App.3d 620.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 66171, 66632 and 66776.

Decided Dec. 6, 1994.

622

*Darryl E. Pittman & Associates* and *Darryl E. Pittman,* for appellants.

*Ulmer & Berne, Murray K. Lenson, John C. Goheen* and *Lawrence F. Peskin,* for appellee Seikel, Koly & Co., Inc.

*Gallagher, Sharp, Fulton & Norman, Thomas E. Dover* and *Timothy J. Fitzgerald,* for appellee Klaiman Bush & Associates.

*Taft, Stettinius & Hollister, Lawrence D. Walker* and *Mark A. Ferguson,* for appellees National Tax Credit, Inc., National Tax Credit Partners, L.P., and The Meridian Company.

KRUPANSKY, Judge.

In this consolidated appeal, plaintiffs-appellants Dynes Corporation ("Dynes Corporation"), Dynes Village Associates Limited Partnership ("Dynes Partnership") and Dolores and Robert Thompson ("the Thompsons") timely appeal from five orders of the Cuyahoga County Common Pleas Court, which follow:

(1) three August 23, 1993 summary judgment grants to

(A) defendants-appellees Seikel, Koly & Co., Inc. ("SKC") and John Seikel ("Seikel");

(B) defendants-appellees NTCP, *viz.,* National Tax Credit Partners, L.P. ("National Partnership") and NTC, *viz.,* National Tax Credit, Inc. ("National Corporation") with respect to only two of appellants' claims against these two appellees; and

(C) defendant-appellee Klaiman Bush & Associates ("Klaiman");

(2) a November 17, 1993 judgment entered *nunc pro tunc* adding "No just reason for delay" language to the foregoing three August 23, 1993 orders; and

(3) a December 17, 1993 summary judgment grant to National Partnership and National Corporation with respect to only appellants' remaining claims against these two appellees.

Dynes Partnership was the owner of a low-income housing project ("the project") built in Cleveland, Ohio by Dynes Corporation. The project was developed to qualify Dynes Partnership for low income housing tax credits pursuant to the Tax Reform Act of 1986 and in accordance with the United States Internal Revenue Code. Dynes Corporation was the operating general partner of Dynes Partnership.

Dynes Corporation and Dynes Partnership thereafter entered into an investment agreement ("the investment agreement") and a partnership agreement ("the partnership agreement") with two California companies, *viz.*, National Partnership and National Corporation. The Thompsons were guarantors of the investment agreement.

Pursuant to the partnership agreement, National Partnership became a limited partner in Dynes Partnership and National Corporation became the administrative general partner and tax matters partner in Dynes Partnership. In addition, in accordance with the partnership agreement, Dolores Thompson, who was the sole shareholder of Dynes Corporation, became the withdrawing limited partner of Dynes Partnership, meaning that she agreed to withdraw from Dynes Partnership simultaneously with the admission of the limited partner National Partnership.

National Corporation, as tax matters partner, was responsible for, *inter alia*, the preparation and filing of Dynes Partnership's federal income tax returns. SKC, an accounting firm, was employed by National Partnership to prepare Dynes Partnership's income tax returns and Klaiman, also an accounting firm, was employed by National Partnership to oversee the preparation and filing by SKC of Dynes Partnership's federal income tax returns. All tax returns were to be prepared by the accounting firms, after which Dynes Corporation would send copies to National Corporation and to National Partnership. Upon review and approval by National Corporation and National Partnership of the tax returns, Dynes Partnership's income tax returns would be filed.

In accordance with the investment agreement, National Partnership was required to make a capital contribution to Dynes Partnership on November 15, 1989 in the amount of $836,915. On November 15, 1989, National Partnership complied with the terms of the investment agreement by (1) delivering $251,075 in cash to Dynes Partnership; (2) delivering $167,383 in cash to an escrow agent; and (3) delivering to Dynes Partnership a capital note in the amount of $418,457.

The escrow funds were to be released at the "First Subsequent Closing" while the capital note was to be paid at the "Second Subsequent Closing." Each of the subsequent closings was to occur upon the satisfaction of certain enumerated conditions precedent contained in the investment agreement.

In 1990, Seikel, a certified public accountant employed by SKC, prepared the 1989 federal income tax return of Dynes Partnership. In so doing, Seikel elected the incorrect ratio of low income housing tax credit, *viz.*, the "20–50" ratio rather than the "40–60" ratio. Seikel then submitted the tax return to Klaiman which filed the income tax return with the United States Internal Revenue Service ("IRS"). One year later, Klaiman discovered Seikel's error. Despite numerous attempts to correct the error, however, the IRS consistently refused Dynes Partnership's request to correct Seikel's error and, thus, elect the "40–60" ratio rather than the "20–50" ratio as filed.

Consequently, Seikel's error allegedly prevented Dynes Partnership from securing sufficient revenue with which to operate the project. Specifically, Seikel's error allegedly prevented Dynes Partnership from satisfying the numerous conditions precedent contained in the investment agreement for release of the escrow funds and payment of the capital note, *i.e.*, the conditions precedent to "subsequent closing." When Dynes Partnership failed to satisfy the conditions precedent contained in the investment agreement required for subsequent closing, National Partnership refused to release the funds in escrow and refused to honor the capital note. Thus, Dynes Partnership allegedly was unable to secure adequate capital in the form of National Partnership's capital contribution with which to operate the project as a result of Seikel's accounting error.

The case *sub judice* was thereafter commenced and appellants eventually joined all appellees in their second amended complaint. On August 23, 1993, the trial court, in three separate journal entries, granted summary judgment to all appellees. Appellants timely filed a notice of appeal from the three August 23, 1993 journal entries.

However, the August 23, 1993 grant of summary judgment to National Corporation and National Partnership did not conclude the case *sub judice* since these two appellees had not as yet moved the court for summary judgment with respect to all of appellants' claims. Thus, the trial court, in one of the foregoing August 23, 1993 journal entries, granted summary judgment to National Corporation and National Partnership with respect to only two of appellants' claims against these appellees. As a result, National Corporation and National Partnership thereafter filed a second motion for summary judgment with respect to the remainder of appellants' claims.

On November 17, 1993, the trial court *sua sponte* journalized a *nunc pro tunc* entry adding "No just reason for delay" language to the August 23, 1993 journal

entries. Appellants timely appealed from this journal entry. Thereafter, on December 17, 1993, the trial court granted the second summary judgment motion of National Corporation and National Partnership thus determining all of appellants' claims against all appellees. Appellants also timely appealed from this journal entry.

The appeal *sub judice*, thus, consists of three appeals as follows:

(1) Cuyahoga App. No. 66171 in which appellants appeal from the three August 23, 1993 journal entries and which raises as issues the trial court's grants of summary judgment to all appellees, *viz.*, National Partnership, National Corporation, Klaiman, Seikel and SKC;

(2) Cuyahoga App. No. 66632 in which appellants appeal from the November 17, 1993 journal entry and which raises as issues the trial court's grant of summary judgment to only Seikel and SKC; and

(3) Cuyahoga App. No. 66776 in which appellants appeal from the December 17, 1993 journal entry and which raises as issues the trial court's grant of summary judgment to only National Partnership and National Corporation.

Since the issues are intertwined among the three appeals, the most practical and uncomplicated approach to this appellate review is to analyze and determine separately the issues presented with respect to each separate grant of summary judgment. For this reason, a review of the summary judgment grant to Seikel and SKC shall be considered initially, followed by a review of the summary judgment grant to National Corporation and National Partnership, after which a review of the summary judgment grant to Klaiman shall be considered.

Civ.R. 56(C) specifically provides that before summary judgment may be granted, the court must determine the following: (1) no genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to only one conclusion viewing such evidence most strongly in favor of the nonmovant and the conclusion is adverse to that party. *Osborne v. Lyles* (1992), 63 Ohio St.3d 326, 587 N.E.2d 825.

In addition, a motion for summary judgment forces the nonmoving party to produce timely filed evidence on issues for which that party bears the burden of production at trial. *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095 (syllabus). The nonmovant must also present specific facts and may not rely merely upon the pleadings or upon unsupported allegations. *Shaw v. J. Pollock & Co.* (1992), 82 Ohio App.3d 656, 612 N.E.2d 1295.

*RE: THE GRANT OF SUMMARY JUDGMENT TO SEIKEL AND SKC*

On November 21, 1991, only Dynes Corporation and the Thompsons commenced the within malpractice action against only Seikel and SKC. Thereafter, these original plaintiffs filed their first amended complaint, joining not only all other appellees in the appeal *sub judice* but also joining Dynes Partnership as a defendant. Dynes Corporation's claims against Dynes Partnership arose from Dynes Partnership's alleged breach of a construction contract. For purposes of this appellate review, it is noted that defendant Dynes *Partnership* was originally represented by Attorneys Thomas R. Kelly and Mark A. Ferguson.

On August 5, 1992, Seikel and SKC filed a motion for judgment on the pleadings, arguing that SKC contracted to provide accounting services to only Dynes Partnership, which was a party defendant, and not to the plaintiff Dynes Corporation. Thereafter, Dynes *Corporation* and the Thompsons, the original plaintiffs, employed the law firm of Porter, Wright, Morris & Arthur ("Porter, Wright") to represent their interests. Counsel for plaintiffs then orally moved the court to permit the filing of a second amended complaint which motion was granted on October 15, 1992. On October 30, 1992, attorneys for the original plaintiffs, Dynes Corporation and the Thompsons, filed their second amended complaint.

In their second amended complaint, the original plaintiffs commenced, *inter alia*, a malpractice suit against Seikel and SKC alleging as follows: (1) National Corporation retained SKC to prepare and file Dynes Partnership's federal income tax returns; (2) Seikel, an employee of SKC, erroneously elected a "20–50" tax credit ratio instead of a "40–60" tax credit ratio; (3) as a result of the erroneous election of the "20–50" tax credit ratio, appellants were neither able to operate the project nor able to comply with the terms of the investment and partnership agreements; (4) since appellants were unable to operate the project and comply with the terms of the investment and partnership agreements, appellants incurred considerable civil liability and monetary damages including, *inter alia*, the loss of capital incurred when National Partnership failed to release the escrow funds and failed to pay the capital note.

In addition, in their second amended complaint, the original plaintiffs, Dynes Corporation and the Thompsons, listed defendant Dynes Partnership as a plaintiff rather than a defendant although counts II and III still raised claims against Dynes Partnership for breach of a construction contract.

On November 17, 1992, all the original defendants in the case *sub judice*, along with new party plaintiff Dynes Partnership, moved to strike the second amended complaint of Dynes Corporation and the Thompsons and to disqualify plaintiffs' counsel, Porter, Wright, from representing the original plaintiffs. Defendants argued that the second amended complaint violated the pleading rules by (1)

converting defendant Dynes Partnership into a plaintiff while failing to dismiss Dynes Corporation's action, contained in counts II and III of the second amended complaint, against Dynes Partnership; and (2) effectively removing Thomas Kelly and Mark Ferguson as counsel for Dynes Partnership. In addition, on November 17, 1992, the original party defendants to the case *sub judice*, including Dynes Partnership, moved the court, in the alternative, to strike counts II and III of the second amended complaint which asserted, on behalf of Dynes Corporation and the Thompsons, a complaint against Dynes Partnership for breach of a construction contract.

Dynes Corporation and the Thompsons, thereafter, filed a brief in opposition to the motion to strike the second amended complaint arguing, *inter alia*, as follows: (1) the first amended complaint contained errors in the presentation of the facts which plaintiffs properly corrected in the second amended complaint; (2) plaintiffs were not required to dismiss Dynes Partnership as a defendant prior to making Dynes Partnership a plaintiff since the second amended complaint related back to the date the action was originally filed; and (3) Dynes Corporation, as operating general partner of Dynes Partnership, had authority to direct the activities of Dynes Partnership, including authority to retain and dismiss Dynes Partnership's counsel.

On February 18, 1993, the trial court denied the motion to strike the second amended complaint. On March 18, 1993 the trial court issued an opinion and ruling with respect to both the motion to strike the second amended complaint and the motion to strike counts II and III of the second amended complaint. The trial court stated in relevant part as follows:

"This court denied the motion to strike and to disqualify counsel for the reason that it was unwilling to strike the entire Second Amended Complaint based upon Plaintiffs' alleged failure to specifically secure leave to amend to add a new party plaintiff and to assert claims against that party's former co-defendants since it was granted leave to amend in general. * * *

"Initially, it should be noted that defendants' statement that the [Dynes] Partnership remains a party defendant since it was never dismissed is inaccurate as the filing of the Second Amended Complaint omits the Partnership as a defendant. Considering the provisions of O.R.C.P. 15(C) regarding relation back of amendments, the amended pleading necessarily takes the place of the original. An amended pleading, complete in itself and failing to refer to or adopt a former pleading as a part of it, supersedes the former pleading which is treated as thereafter nonexistent. * * * As such, the Second Amended Complaint is the sole complaint. The Partnership is now a plaintiff and no longer a defendant. * * *

"More importantly, notwithstanding plaintiffs' argument that the real parties in interest are the defendant partners who are represented separately, it remains that Counts II and III seek relief from the Partnership which is represented by the same counsel as the party seeking the relief. * * * As such, counsel for the Partnership cannot answer those allegations of Counts II and III since it is the same counsel asserting those claims while seeking joint relief on other claims. For these reasons, Counts II and III are stricken from the Second Amended Complaint."

Thereafter, Dynes Corporation, Dynes Partnership and the Thompsons, appellants in the case *sub judice*, substituted Darryl E. Pittman as counsel in place of Porter, Wright, which withdrew as counsel citing ethical considerations.

On April 30, 1993, Seikel and SKC moved for summary judgment arguing, *inter alia*, as follows: (1) Seikel and SKC owed no duty to Dynes Corporation and the Thompsons since Seikel and SKC were retained by only Dynes Partnership; (2) plaintiffs offered no evidence that the acts of Seikel and SKC were the proximate cause of plaintiffs' injuries; and (3) plaintiffs offered no evidence of damages incurred as a result of the acts of Seikel and SKC. Appellees attached to their summary judgment motion, *inter alia*, (1) Dynes Partnership's 1989 federal income tax return, prepared by Seikel, which noted the "20–50" tax credit ratio election; (2) the affidavit of John Seikel; (3) answers to appellees' first set of interrogatories propounded to appellants; and (4) a letter written by appellants' expert witness Attorney Stephen C. Weingrad.

On May 3, 1993, Attorney Thomas R. Kelly, acting on behalf of only Dynes Partnership, filed a motion for partial stay of the proceedings against Seikel and SKC pending a final determination by the IRS as to whether or not the 1989 erroneous tax ratio election was, in fact, irrevocable. In addition, on June 1, 1993, Attorney Thomas R. Kelly filed a memorandum in opposition to appellees' summary judgment motion on behalf of only Dynes Partnership. Thereafter, appellees moved the court to strike Dynes Partnership's motion for partial stay and memorandum in opposition to appellees' summary judgment motion, arguing that Thomas R. Kelly was no longer counsel for Dynes Partnership.

On June 21, 1993, appellants filed a brief in opposition to appellees' summary judgment motion supported, in accordance with *Wing, supra,* and *Shaw, supra,* by a separate document entitled "Exhibits to Plaintiffs' Response to John Seikel and Seikel, Koly Co.'s Motion for Summary Judgment" ("Appellants' Exhibits"). In their opposition brief, appellants argued that all the plaintiffs, *viz.,* Dynes Corporation, the Thompsons and Dynes Partnership, were clients of SKC and that they were damaged when, *inter alia,* National Partnership refused to make its capital contribution to Dynes Partnership due to Seikel's erroneous tax credit ratio election. Appellees filed a reply brief in which they admitted National

Partnership refused to make its capital contribution but claimed appellants failed to satisfy conditions precedent to payment of the capital contribution.

On July 22, 1993, the trial court denied Dynes Partnership's motion for partial stay, filed by Attorney Thomas R. Kelly, stating as follows:

"Motion for Partial Stay of Proceedings is denied as Attys. Kelly & Ferguson cannot request a stay of proceedings with regard to claims of the Partnership they claim to represent against party Defts. they also claim to represent."

On the same date, the trial court also granted appellees' motion to strike the opposition memorandum filed by Attorney Thomas R. Kelly.

Thereafter, on August 23, 1993, the trial court, in one of three journal entries, granted summary judgment in favor of Seikel and SKC, stating as follows:

"Motion for Summary Judgment of Defts. Seikel, Koly & Co., Inc. & John Seikel is granted as to [against] Pltf. Dynes Village Associates Limited Partnership as the Partnership has not yet suffered damages. (Plaintiff Partnership has failed to seek a stay until damages could be determined in spite of Plaintiff's notice of such alternative via the filing of a motion to stay by inappropriate counsel.) Motion for Summary Judgment is granted as to [against] all remaining Plaintiffs as Defts. did not owe them a duty."

On September 15, 1993, appellants filed a timely appeal with respect to all appellees in the case *sub judice, viz.,* Cuyahoga App. No. 66171, with this court. On November 17, 1993, the trial court *sua sponte* journalized a *nunc pro tunc* entry adding "No just reason for delay" to all the final orders journalized August 23, 1993. On December 16, 1993, appellants filed a second notice of appeal, Cuyahoga App. No. 66632, from this *nunc pro tunc* entry. The assignments of error contained in Cuyahoga App. Nos. 66171 and 66632 shall be considered in logical order.

■ Appellants' fourth assignment of error in Cuyahoga App. No. 66632 states as follows:

"IV. The trial court erred when it denied the motion to strike plaintiff's second amended complaint from the files and to disqualify plaintiffs' counsel filed by Dynes Village [Dynes Partnership], Seikel, Koly and the other defendants."

This assignment lacks merit.

In this assignment of error, appellants contest the February 18, 1993 and March 18, 1993 orders in which the trial court (1) refused to strike the second amended complaint filed by Dynes Corporation and the Thompsons; and (2) refused to disqualify counsel for the original plaintiffs inasmuch as the second amended complaint was valid and converted Dynes Partnership from a defendant into a plaintiff.

Civ.R. 15 states in relevant part as follows:

"(A) * * * [A] party may amend his pleading * * * by leave of court or by written consent of the adverse party. Leave of court shall be freely given when justice so requires. * * *

" * * *

"(C) * * * Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. * * * "

■ Absent an abuse of discretion, this court may not overrule the trial court's decision to permit the amendment of pleadings. An abuse of discretion requires more than a mere error of law or judgment. On the contrary, a trial court abuses its discretion only when its attitude is unreasonable, arbitrary or unconscionable. *Wilmington Steel Products, Inc. v. Cleveland Elec. Illum. Co.* (1991), 60 Ohio St.3d 120, 573 N.E.2d 622.

In the case *sub judice*, the partnership agreement stated in relevant part as follows:

"5.1 *Exercise of Management.*

"A. The *overall management and control of the business, assets and affairs of the Partnership* [Dynes Partnership] *shall be vested in the Operating General Partner* [Dynes Corporation]. * * * The Limited Partner [National Partnership] shall not take part in the management or control of the business of the Partnership. * * *

"5.2 *Duties and Authority of Operating General Partner.*

"A. The Operating General Partner * * * are [*sic* ] authorized and directed to:

"(i) *Take all action that may be necessary or appropriate* to carry out the purposes of the Partnership as described in this Agreement. * * * " (Italics added.)

A thorough examination of the investment and partnership agreements contained in the instant record demonstrates that pursuant to Section 5.1, *supra*, and Section 5.2, *supra*, the operating general partner, *viz.*, Dynes Corporation, was vested with sole authority to commence legal actions on behalf of Dynes Partnership. In addition, Dynes Corporation and the Thompsons complied with Civ.R. 15(A), *supra*, by moving the trial court for leave to amend their first amended complaint, which motion was granted. It therefore cannot be said the trial court's attitude was unreasonable, arbitrary or unconscionable when it granted

appellants' motion for leave to file the second amended complaint. *Wilmington Steel, supra.*

In addition, since the second amended complaint related back to the date the original complaint was filed, November 21, 1991, the second amended complaint superseded appellants' two previous complaints, rendering the two previous complaints, in effect, null and void. The trial court, thus, correctly concluded that Dynes Partnership was a plaintiff in the case *sub judice* rather than a defendant following the filing of the second amended complaint. Since plaintiffs were represented by Porter, Wright and Dynes Partnership validly was made a plaintiff, the trial court did not err when it refused to disqualify plaintiffs' counsel.

Appellants' fourth assignment of error in Cuyahoga App. No. 66632 lacks merit and, therefore, is overruled.

Appellants' second and third assignments of error in Cuyahoga App. No. 66632 follow:

"II. The trial court erred to the prejudice of Dynes Village [Dynes Partnership] when it denied Dynes Village's motion for partial stay of proceedings on its accountant malpractice claim pending completion of proceedings before the Internal Revenue Service.

"III. The trial court erred to the prejudice of Dynes Village when it granted Seikel, Koly's motion to strike Dynes Village's memorandum in opposition to their motion for summary judgment and Dynes Village's motion for partial stay of proceedings."

These assignments lack merit.

■ In these assignments of error, appellants contest the trial court's July 22, 1993 judgment entries which essentially held that Attorney Thomas R. Kelly was not authorized to file on behalf of Dynes Partnership the two subject documents, *viz.,* the memorandum in opposition to Seikel's and SKC's summary judgment motion and the motion for partial stay of proceedings against these appellees.

Pursuant to Civ.R. 15(C), *supra,* the second amended complaint related back to the date of the original complaint, *viz.,* November 21, 1991. In accordance with the second amended complaint, former defendant Dynes Partnership, which was represented by Attorney Thomas R. Kelly and Attorney Mark Ferguson, was joined with plaintiffs Dynes Corporation and the Thompsons who were represented by other counsel. Since the second amended complaint related back to the date the original complaint was filed, November 21, 1991, appellants, *via* the second amended complaint, effectively terminated Attorney Thomas R. Kelly and Attorney Mark Ferguson as counsel for Dynes Partnership and replaced these

attorneys with plaintiffs' counsel as of the date the second amended complaint was filed.

It is significant to note that Attorney Thomas R. Kelly was also counsel for appellees National Corporation and National Partnership. Clearly, Thomas R. Kelly could not adequately represent the interests of both a plaintiff and a defendant in the case *sub judice*. Since Thomas R. Kelly ceased to represent Dynes Partnership following the filing of the second amended complaint on October 30, 1992, he was without authority to file on May 3, 1993 and June 1, 1993 the foregoing two documents. The trial court did not err, therefore, when it granted appellees' motion to strike the foregoing documents and denied appellants' motion for partial stay of proceedings.

Appellants' second and third assignments of error in Cuyahoga App. No. 66632 lack merit and, therefore, are overruled.

Appellants' first, second and third assignments of error in Cuyahoga App. No. 66171 follow:

"I. The trial court erred when it granted Seikel's motion for summary judgment against Dynes Corporation on the grounds that [it] did not owe Dynes Corporation a duty.

"II. The trial court erred when it granted John Seikel's and Seikel and Koly, Co.'s motion for summary judgment against Dynes Village Limited Partnership on the grounds that the partnership had not been damaged by Seikel's mistaken election, because said defendants failed to submit evidence required under Rule 56 that there was no issue of material fact and they were entitled to summary judgment as a matter of law.

"III. The trial court erred when it found that there was no material issue of fact as to whether Dynes Village Limited Partnership had been damaged by Seikel's mistaken election."

Appellants' first assignment of error in Cuyahoga App. No. 66632 follows:

"I. The trial court erred to the prejudice of Dynes Village Associates Limited Partnership ('Dynes Village') when it granted the motion for summary judgment of defendants-appellees Seikel, Koly & Co., Inc., and John Seikel (collectively referred to hereafter as 'Seikel, Koly') on the accountant malpractice claims asserted by Dynes Village."

These assignments have merit.

In the case *sub judice*, the trial court granted summary judgment to appellees Seikel and SKC on August 23, 1993 based upon two conclusions, *viz.*, (1) appellees owed a duty to only Dynes Partnership and owed no duty to Dynes Corporation;

and (2) appellants failed to provide evidence of damages incurred as a proximate result of the erroneous tax credit ratio election.

It is axiomatic that a plaintiff must establish the elements of a *prima facie* case of malpractice in order to prevail at trial, *viz.*, (1) duty; (2) breach of that duty; and (3) damage or injury that occurs as a proximate result of the breach. *Simmers v. Bentley Constr. Co.* (1992), 64 Ohio St.3d 642, 597 N.E.2d 504; *Belfer v. Spiegel* (1984), 18 Ohio App.3d 64, 18 OBR 178, 480 N.E.2d 825. An accountant owes a duty of ordinary, reasonable care to a client. A duty owed to a partnership extends to the individual partners thereof. *Haddon View Invest. Co. v. Coopers & Lybrand* (1982), 70 Ohio St.2d 154, 24 O.O.3d 268, 436 N.E.2d 212. Cf. *Arpadi v. First MSP Corp.* (1994), 68 Ohio St.3d 453, 628 N.E.2d 1335.

In the case *sub judice*, it was undisputed that Dynes Partnership was an Ohio limited partnership. In addition, it was also undisputed that Dynes Corporation, an Ohio corporation, was the operating general partner of Dynes Partnership. In accordance with *Arpadi, supra,* clearly any duty owed by SKC to Dynes Partnership was also a duty owed to the partners individually. Since Dynes Corporation was a partner in Dynes Partnership, any duty owed by SKC to Dynes Partnership extended to Dynes Corporation. *Arpadi, supra.* Since SKC owed a duty of ordinary, reasonable care to Dynes Partnership, such duty was also owed by SKC to Dynes Corporation. The trial court, thus, erred when it concluded SKC owed no duty to Dynes Corporation and granted summary judgment to appellees Seikel and SKC based in part upon this conclusion.

The trial court also granted appellees' summary judgment with respect to only Dynes Partnership holding that appellants failed to provide evidence Dynes Partnership incurred damages. The record before this appellate court, however, belies this conclusion.

As noted *supra,* appellants timely filed a document with the trial court herein referred to as "Appellants' Evidence." Appellants' Evidence contained, *inter alia,* the affidavit of an expert witness, Attorney Charles Gruenspan, and the written expert opinion of Attorney Stephen C. Weingrad.

The expert report of Attorney Stephen C. Weingrad provided the following relevant testimony:

"(1) On or before November 15, 1989, low income housing tax credits of $30,016.00 for 1989 and not less than $180,000.00 for each year thereafter until 1999 were duly allocated and made available to the Dynes Partnership low income housing project;

"(2) Dynes Corporation complied with or caused Dynes Partnership to comply with, in a substantial manner, all conditions precedent required by the investment

agreement for release of the funds in escrow and payment of the capital note, *i.e.,* all conditions precedent to subsequent closing; and

"(3) To the extent Dynes Corporation was unable to comply with the aforementioned conditions precedent, such non-compliance appeared to be the result of SKC's election on behalf of Dynes Partnership of the 20–50 ratio rather than the 40–60 ratio."

In addition, Attorney Charles Gruenspan's affidavit provided the following relevant testimony:

"(1) As tax matters partner to Dynes Partnership, National Partnership was responsible for overseeing all tax matters of Dynes Partnership;

"(2) As tax matters partner, National Partnership directed that SKC be retained as the tax accountant for Dynes Partnership and also retained Klaiman Bush & Assoc. to assist National Partnership in overseeing the preparation and filing of all Dynes Partnership tax returns;

"(3) The 1989 federal income tax return for Dynes Partnership, prepared by SKC under the direction and supervision of Klaiman and National Partnership, made an incorrect and irrevocable election for low income housing credits which effectively destroyed the availability of most of the anticipated tax credits for the project;

"(4) Except for some relatively minor and easily attainable requirements pursuant to the parties' agreements, had the tax credits not been forfeited through the fault of National Partnership and its accountants, the subsequent closings should have occurred; and

"(5) In reasonable reliance upon National Partnership's representations that it was unwilling to release any funds until a favorable ruling was received from the IRS and National Partnership's representations that a favorable ruling from the IRS was imminent, Dynes Corporation refrained from submitting any other closing documents since such submission was futile."

The report of Attorney Charles Gruenspan, thus, indicated that Dynes Partnership's tax credits were irrevocably lost due to the error of Seikel and SKC. The report of Attorney Stephen C. Weingrad estimated the value of the tax credits to be $30,016 for year 1989 and not less than $180,000 for each year thereafter until year 1999.

In addition, it was undisputed that National Partnership failed to make its capital contribution in full to Dynes Partnership. The report of Attorney Charles Gruenspan provided evidence that subsequent closings, and release of the escrow funds along with payment of the capital note, would have occurred had SKC not elected the incorrect tax credit ratio. Appellants consistently claimed that as a

result of the failure of the capital contribution, appellants were neither able to operate the project nor able to comply with the terms of the investment and partnership agreements.

Furthermore, National Corporation filed with the trial court a June 26, 1992 letter from Attorney Mark Walther who was general counsel for National Corporation. Attorney Walther's letter demonstrated that Dynes Partnership was in default with its mortgage lender and that a notice of default was filed by the mortgagee with the United States Department of Housing and Urban Development.

Moreover, numerous documents contained in the instant record attested to the fact that National Corporation removed or attempted to remove Dynes Corporation as operating general partner of Dynes Partnership due to the financial failure of Dynes Partnership. Dolores Thompson, in her affidavit, stated the erroneous tax ratio election virtually put her out of business. Based upon the foregoing evidence timely filed with the trial court, it cannot be said that appellants failed to produce evidence demonstrating that they were damaged.

The trial court found that since the IRS had not as yet ruled upon the revocability of the 1989 tax credit election, Dynes Partnership had not as yet incurred damages. However, the fact that the IRS had not as yet determined the revocability of the erroneous tax credit ratio election was irrelevant since appellants had already incurred substantial damages due to the tax error, notably, the financial failure of their entire venture.

In summary, SKC owed a duty of ordinary, reasonable care to Dynes Partnership and to Dynes Corporation as a matter of law. It was undisputed in the case *sub judice* that SKC elected the "20–50" tax credit ratio rather than the "40–60" tax credit ratio. Conclusive evidence of this fact was provided in the form of Dynes Partnership's 1989 federal income tax return. In addition, appellants produced relevant, timely filed evidence, *viz.*, the expert reports of Attorneys Stephen C. Weingrad and Charles Gruenspan, demonstrating that Seikel's erroneous tax credit election was the proximate cause of the damages incurred by appellants. Finally, appellants and appellees produced timely filed evidence demonstrating that appellants incurred significant damages as a result of the alleged negligence of Seikel and SKC.

Based upon the foregoing analysis, it cannot be said that appellees Seikel and SKC were entitled to summary judgment as a matter of law. It cannot be said that reasonable minds could come to only one conclusion which was adverse to appellants upon viewing the foregoing evidence most strongly in favor of appellants. Genuine issues of material fact remained to be litigated with respect to whether Seikel's acts constituted a breach of the duty of ordinary, reasonable care.

In addition, genuine issues of material fact remained to be litigated with respect to whether Seikel's acts did, in fact, proximately cause the damages incurred by Dynes Partnership. The trial court, thus, erred when it granted appellees' summary judgment motion with respect to Dynes Partnership's and Dynes Corporation's malpractice action against Seikel and SKC. *Osborne, supra.*

Appellants' first, second and third assignments of error in Cuyahoga App. No. 66171 and appellants' first assignment of error in Cuyahoga App. No. 66632 have merit and, therefore, are sustained.

### *RE: THE GRANT OF SUMMARY JUDGMENT TO NATIONAL PARTNERSHIP AND NATIONAL CORPORATION*

In their second amended complaint, appellants alleged the following with respect to National Corporation and National Partnership: (1) National Partnership failed to tender the entire capital contribution; (2) National Corporation negligently performed its duties as tax matters partner when it negligently employed SKC and Klaiman as accountants for appellants and negligently supervised the preparation and filing, by SKC and Klaiman, of Dyne's Partnership's 1989 federal income tax return; (3) Dynes Corporation properly removed National Corporation as administrative general partner of Dynes Partnership; (4) National Corporation illegally removed Dynes Corporation as operating general partner of Dynes Partnership; and (5) National Corporation misrepresented to tenants of the project and the recorder's office that it removed Dynes Corporation as operating general partner of Dynes Partnership.

On May 3, 1993, National Partnership and National Corporation filed a motion for summary judgment claiming in relevant part as follows: (1) National Partnership made the required capital contribution to appellants in the form of cash paid to appellants, cash deposited into escrow and a capital note. When appellants failed to satisfy the conditions precedent contained in the investment agreement, National Partnership, in accordance with the investment agreement, properly refused to release the funds from escrow and was under no obligation to honor the note; and (2) National Partnership and National Corporation must be granted summary judgment if Seikel and SKC are granted summary judgment. Appellees attached, *inter alia,* a copy of the capital escrow agreement and the capital note to their summary judgment motion.

Appellants filed a brief in opposition to appellees' summary judgment motion arguing in relevant part as follows: (1) as tax matters partner, National Corporation and, therefore, National Partnership bore the responsibility for all federal income tax decisions including the election of the erroneous tax credit ratio in 1989; (2) the aforementioned conditions precedent to release of the capital funds could not be satisfied unless appellees elected the proper tax credit ratio; (3)

appellants were unable to perform the aforementioned conditions precedent due to the election of the erroneous tax credit ratio in 1989 which was caused by the negligence of appellees; and (4) since the negligence of appellees prevented appellants from performing, appellees anticipatorily breached the investment agreement. Appellants offered, in accordance with *Wing, supra,* and *Shaw, supra,* evidence in support of their opposition brief as follows: (1) the investment agreement; (2) the affidavit of Attorney Charles Gruenspan; and (3) the written expert opinion of Attorney Stephen Weingrad, all of which evidence was contained in the foregoing document referred to as Appellants' Evidence.

On August 23, 1993, the trial court granted the summary judgment motion of National Partnership and National Corporation stating in relevant part as follows:

"Deft. National Tax Credit Partners, L.P.'s motion for summary judgment is granted as there is no factual issue that defendant made the capital contribution pursuant to the agreement and Dynes Corp. failed to satisfy the conditions precedent to the release of the escrowed funds and payment on the note. Deft.'s National Tax Credit, Inc. and The Meridian Company's motion for summary judgment is granted as NTCI and Meridian cannot be liable unless Seikel, Koly is liable."

On September 15, 1993, appellants timely appealed to this court with respect to all appellees in the case *sub judice, viz.,* Cuyahoga App. No. 66171. On November 8, 1993, however, National Partnership and National Corporation filed another motion requesting summary judgment on the remainder of appellants' claims against appellees National Partnership and National Corporation contained in the second amended complaint, *viz.,* Dynes Corporation's removal of National Corporation as administrative general partner and tax matters partner of Dynes Partnership, National Corporation's removal of Dynes Corporation as operating general partner of Dynes Partnership and appellants' claim National Corporation misrepresented to tenants of the project and to the recorder's office that it removed Dynes Corporation as operating general partner of Dynes Partnership.

In its second summary judgment motion, appellees argued essentially that National Corporation, in accordance with the partnership and investment agreements, properly removed Dynes Corporation as operating general partner of Dynes Partnership by filing an amended certificate of limited partnership. Appellees attached no evidence to this summary judgment motion but made reference to the June 26, 1992 letter of Attorney Mark Walther, general counsel of National Corporation. Appellants did not file a brief in opposition to the November 8, 1993 summary judgment motion.

On November 17, 1993, the trial court made a *nunc pro tunc* entry adding "No just reason for delay" to all of the final orders journalized August 23, 1993. Thereafter, on December 17, 1993, the trial court granted appellees National Partnership and National Corporation summary judgment on their November 8, 1993 motion. On January 14, 1994, appellants then filed a notice of appeal, Cuyahoga App. No. 66776, from the trial court's December 17, 1993 grant of summary judgment to appellees.

Thus, the trial court granted two summary judgment motions on behalf of National Corporation and National Partnership, *viz.*, (1) the August 23, 1993 grants of summary judgment to National Partnership which determined that Dynes Corporation failed to satisfy conditions precedent contained in the investment agreement and to National Corporation which determined that National Corporation was not liable since SKC was not liable; and (2) the December 17, 1993 summary judgment grant in favor of National Partnership and National Corporation with respect to the removal of Dynes Corporation by National Corporation as operating general partner of Dynes Partnership and with respect to appellants' claim of misrepresentation.

Appellants' fourth assignment of error raised in Cuyahoga App. No. 66171 states as follows:

"IV. The trial court erred in granting the NTC parties summary judgment on the grounds that they had paid the capital contribution and the finding that Dynes had not satisfied the conditions precedent to payment.

This assignment has merit.

In the case *sub judice*, appellees argued in their May 3, 1993 summary judgment motion that appellants failed to satisfy the conditions precedent contained in the investment agreement which required satisfaction before appellees were obligated to release the funds in escrow and pay the capital note. Appellants, however, claimed that National Partnership and National Corporation, by negligently hiring SKC and Klaiman and negligently overseeing the preparation and filing of Dynes Partnership's 1989 federal income tax return by SKC and Klaiman, prevented appellants from performing the aforementioned conditions precedent. Appellants offered, in support of this contention and in accordance with *Wing, supra,* and *Shaw, supra,* evidence contained in the document Appellants' Evidence as follows: (1) the investment agreement; (2) the affidavit of expert witness Attorney Charles Gruenspan; and (3) the written expert opinion of Attorney Stephen C. Weingrad.

Pursuant to Paragraph 4.5 of the investment agreement, the funds held in escrow were to be released at the "First Subsequent Closing" while the payment of the capital note was to occur at the "Second Subsequent Closing." The dates

of these subsequent closings were dependent upon the dates that all of the conditions precedent to the release of the funds from escrow and to the payment of the capital note were satisfied. The conditions precedent were contained in Section 4.6 of the investment agreement which states in relevant part as follows:

"4.6 *Actions to be Taken at Each Subsequent Closing.* At each Subsequent Closing *and as a condition thereof,* the Operating General Partner [Dynes Corporation] on behalf of itself and the Local Partnership [Dynes Partnership] shall deliver the following documents * * * to the Investor [National Partnership], all in form and substance satisfactory to Investor: * * *

" * * *

"(b) A certificate of the Operating General Partner and Thompson dated as of such Subsequent Closing Date, certifying on behalf of itself and the Local Partnership, that the *warranties and representations set forth in Paragraph 6 hereof continue to be true, correct and in force as of such date;* * * *

" * * *

"(e) *An updated Housing Credit Certificate* * * *." (Emphasis added.)

Paragraph 6.10 of the investment agreement states in relevant part as follows:

"(d) The Operating General Partner has provided the Investor with true, complete and correct copies of all material correspondence and contracts with, applications to, and *allocation certificates from any Housing Credit Agency concerning Tax Credits allocated to the Apartment Complex, such allocation is in full force and effect in accordance with its terms, and such allocation supports, for the calendar year 1989,* and assuming no change in the certified rent-roll or the area median gross income for the area in which the Apartment Complex is located, *that there will be Tax Credits available to the Investor in at least the amount and for the periods [1989 through 1999]."* (Emphasis added.)

Thus, one of the aforementioned conditions precedent to the release of escrow funds and to the payment of the capital note was that appellants were required to demonstrate they secured the low income housing tax credits from the IRS.

As stated *supra,* the expert report of Attorney Stephen C. Weingrad provided the following relevant testimony:

"(1) On or before November 15, 1989, low income housing tax credits of $30,016.00 for 1989 and not less than $180,000.00 for each year thereafter until 1999 were duly allocated and made available to the Dynes Partnership low income housing project;

"(2) Dynes Corporation complied with or caused Dynes Partnership to comply with, in a substantial manner, all conditions precedent required by the investment

agreement for release of the funds in escrow and payment of the capital note, *i.e.,* all conditions precedent to subsequent closing; and

"(3) To the extent Dynes Corporation was unable to comply with the aforementioned conditions precedent, such non-compliance appeared to be the result of SKC's election on behalf of Dynes Partnership of the 20–50 ratio rather than the 40–60 ratio."

In addition, Attorney Charles Gruenspan's affidavit provided the following relevant testimony:

"(1) As tax matters partner to Dynes Partnership, National Partnership was responsible for overseeing all tax matters of Dynes Partnership;

"(2) As tax matters partner, National Partnership directed that SKC be retained as the tax accountant for Dynes Partnership and also retained Klaiman Bush & Assoc. to assist National Partnership in overseeing the preparation and filing of all Dynes Partnership tax returns;

"(3) The 1989 federal income tax return for Dynes Partnership, prepared by SKC under the direction and supervision of Klaiman and National Partnership, made an incorrect and irrevocable election for low income housing credits which effectively destroyed the availability of most of the anticipated tax credits for the project;

"(4) Except for some relatively minor and easily attainable requirements pursuant to the parties' agreements, had the tax credits not been forfeited through the fault of National Partnership and its accountants, the subsequent closings should have occurred; and

"(5) In reasonable reliance upon National Partnership's representations that it was unwilling to release any funds until a favorable ruling was received from the IRS and National Partnership's representations that a favorable ruling from the IRS was imminent, Dynes Corporation refrained from submitting any other closing documents since such submission was futile."

■ Nonperformance of a condition is excused where performance thereof is prevented by the other party. In *Suter v. Farmers' Fertilizer Co.* (1919), 100 Ohio St. 403, 126 N.E. 304, syllabus, the Ohio Supreme Court stated in relevant part as follows:

"Where the obligations arising under a contract have attached, and subsequent thereto one party without the consent of the other does some act or makes some new arrangement which prevents the carrying out of the contract according to its terms, he cannot avail himself of this conduct to avoid his liability to the other party."

In the case *sub judice,* appellants produced timely filed evidence containing specific facts in support of their allegation that appellees National Partnership and National Corporation caused appellants' inability to perform in accordance with the terms of the investment agreement. *Wing, supra; Shaw, supra.* A determination by the trial court that appellees caused appellants' nonperformance of the terms of the investment agreement would have precluded appellees from withholding the release of the escrow funds and precluded appellees from refusing to pay the capital note based solely upon appellees' contention that appellants failed to satisfy the aforementioned conditions precedent. *Suter, supra.*

Therefore, the issue of whether or not appellees caused appellants' failure to satisfy the aforementioned conditions precedent constituted a genuine issue of material fact remaining to be litigated. Clearly, reasonable minds could not come to only one conclusion adverse to appellants upon consideration of the evidence viewed most strongly in favor of appellants. *Osborne, supra.*

In addition, the trial court held that National Corporation was not liable as a matter of law since SKC was not found to be liable. However, National Corporation's liability for negligence does not inevitably depend upon a finding that SKC is liable. It is noteworthy that, pursuant to the partnership agreement, Section 5.5(B)(v), appellants were prohibited from discharging the accounting firms employed by National Partnership without the approval of National Corporation. Nevertheless, since the grant of summary judgment to Seikel and SKC has been reversed, *supra,* the grant of summary judgment to National Corporation based solely upon SKC's lack of negligence constituted error.

Based upon the foregoing analyses, appellees National Partnership and National Corporation were not entitled to summary judgment as a matter of law and the trial court erred when it granted the May 3, 1993 summary judgment motion of appellees National Partnership and National Corporation. *Osborne, supra.*

Appellants' fourth assignment of error raised in Cuyahoga App. No. 66171 has merit and, therefore, is sustained.

■ Appellants' first assignment of error in Cuyahoga App. No. 66776 follows:

"I. The trial court erred by granting summary judgment because that judgment interferes with the ability of the court of appeals to modify or reverse the trial court's determination as to the capital contribution."

This assignment lacks merit.

The essence and simply stated of this assignment of error is a bifurcation of the final appealable orders. The first set of appealable orders (Cuyahoga App.

No. 66171) was accompanied by the phrase "No just reason for delay," Civ.R. 54(B), thereby leaving jurisdiction in the trial court to dispose of the second set of orders (Cuyahoga App. No. 66776) on a subsequent occasion while the first set of orders had already been appealed without interfering with the appealability of either set of orders. In this assignment of error, appellants essentially argue that the trial court, on December 17, 1993, lacked jurisdiction to grant the November 8, 1993 summary judgment motion of appellees, National Partnership and National Corporation, since the appeal *sub judice,* Cuyahoga App. No. 66171, filed on September 15, 1993, deprived the trial court of jurisdiction over the issues remaining against National Corporation and National Partnership. Appellants' analysis is flawed.

Civ.R. 54(B) states in relevant part as follows:

"When more than one claim for relief is presented in an action, * * * the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. * * * *"

Civ.R. 54(B), thus, grants the trial court jurisdiction to adjudicate unresolved claims in a pending action even though adjudicated claims in that pending action which include the clause "No just reason for delay" have already been appealed.

In the appeal *sub judice,* on September 15, 1993, appellants filed an appeal, *viz.,* Cuyahoga App. No. 66171. Cuyahoga App. No. 66171 appealed from the August 23, 1993 judgments of the trial court in favor of all appellees. Pursuant to the November 17, 1993 journal entry, the trial court added "No just reason for delay" to the August 23, 1993 judgments. Cuyahoga App. No. 66171, thus, timely appealed from judgments in favor of all appellees made final and appealable pursuant to Civ.R. 54(B), *supra.*

However, the August 23, 1993 judgments, although final and appealable, failed to adjudicate some of appellants' claims against National Corporation and National Partnership. Specifically, the August 23, 1993 judgments did not adjudicate the claims that (1) National Corporation illegally removed Dynes Corporation as operating general partner of Dynes Partnership; and (2) National Corporation thereafter misrepresented to the tenants of the project and to the recorder's office that National Corporation removed Dynes Corporation as operating general partner of Dynes Partnership. The two foregoing claims, thus, remained pending in the trial court even though the claims adjudicated by the trial court in the August 23, 1993 judgment entries were already appealed.

Since the August 23, 1993 judgments contained the clause "No just reason for delay," *albeit* by a *nunc pro tunc* entry, appellants' adjudicated claims were ripe for appeal regarding Cuyahoga App. No. 66171. Pursuant to Civ.R. 54(B), *supra,*

appellants' timely filing of this ripe appeal, *viz.*, Cuyahoga App. No. 66171, did not divest the trial court of jurisdiction to adjudicate appellants' unresolved pending claims against National Corporation and National Partnership. Accordingly, the trial court did not err when, on December 17, 1993, the trial court adjudicated the unresolved claims against National Corporation and National Partnership. On appeal, this second set of final appealable orders was given Cuyahoga App. No. 66776.

Appellant's first assignment of error in Cuyahoga App. No. 66776 lacks merit and, therefore, is overruled.

Appellants' second assignment of error in Cuyahoga App. No. 66776 follows:

"II. The trial court erred by finding that defendant was entitled to judgment as a matter of law on the grounds that the amended certificate is conclusive as to the membership of the limited partnership."

This assignment has merit in part and lacks merit in part.

■■■ In their summary judgment motion of November 8, 1993, appellees National Partnership and National Corporation argued that National Corporation, in accordance with the investment agreement, properly removed Dynes Corporation as operating general partner of Dynes Partnership by filing an amended certificate of limited partnership and did not misrepresent to tenants of the project and the recorder's office that National Corporation removed Dynes Corporation as operating general partner of Dynes Partnership. Appellees attached no evidence to this summary judgment motion.

Appellants, however, did not file a brief in opposition to this summary judgment motion. On December 17, 1993, the trial court granted summary judgment to appellees on their November 8, 1993 motion.

R.C. 1782.01 states in relevant part as follows:

"(I) 'Partnership agreement' means any valid written or oral agreement of the partners as to the affairs of a limited partnership and the conduct of its business."

In the case *sub judice,* the investment agreement between appellants, National Partnership and National Corporation, constituted, in accordance with R.C. 1782.01, *supra,* a "partnership agreement." In addition the parties executed a separate partnership agreement termed "Second Amended and Restated Certificate and Agreement of Limited Partnership" which, thus far, has been referred to as "the partnership agreement."

R.C. 1782.23 states in relevant part as follows:

"Except as approved by the specific written consent of all partners at the time, a person ceases to be a general partner of a limited partnership upon the happening of any of the following events of withdrawal:

" * * *

"(C) The general partner is removed as a general partner *in accordance with the partnership agreement.* * * *" (Emphasis added.)

The partnership agreement states in relevant part as follows:

"11.4  *Special Removal Rights.*

"A.   Notwithstanding any other provision of this Agreement to the contrary, in the event that:

"(i) any Operating General Partner shall:

"(a) materially violate its fiduciary responsibilities as a General Partner of the Partnership;

"(b) be in material breach of this Agreement or the Investment Agreement or any related document for 10 days after notice thereof has been given by the Administrative General Partner.  * * *

" * * *

"(e) fail, for any reason, to deliver to the Limited Partner and the Administrative General Partner within 10 days of when due any of the information or statements required by Section 7.3 [balance sheets, income statements, cash flow statements, reports of operations].

"(ii) the Partnership shall:

" * * *

"(b) at any time after Rental Achievement, have realized Cash Flow of less than $0 with respect to any period of six consecutive months;  or

"(c) have had less than 90% of the apartment units in the Apartment Complex eligible to receive the Tax Credit in any month * * * [or] * * * otherwise be in any situation where the amount of the Tax Credits which the Partnership is entitled to claim under Section 42 of the Code be less than $155,609 per year through 1998.  * * *

"then, in any event (a 'Major Default'), *the Administrative General Partner shall have the right * * * in its sole discretion, * * * to remove such Operating General Partner.  * * *"* (Emphasis added.)

In the case *sub judice,* appellees stated in their November 8, 1993 summary judgment motion that Dynes Corporation was removed as operating general partner of Dynes Partnership by National Corporation in the spring of 1992.

Appellees offered the June 26, 1992 letter to Dolores Thompson from National Corporation's counsel Attorney Mark Walther into evidence in support of their summary judgment motion. Mark Walther's letter was attached as Exhibit E to the Second Affidavit of Nancy Wright which was filed with the trial court on November 8, 1993.

In the letter of June 26, 1992, Attorney Mark Walther stated that National Corporation, on June 12, 1991, notified Dynes Corporation that its major default of the partnership and investment agreements was imminent and required curing. Attorney Walther also stated in his letter that, pursuant to Section 11.4 of the partnership agreement, *supra*, Dynes Corporation failed to cure as demanded in the June 12, 1991 letter and was, as of June 26, 1992, notified that Dynes Corporation was in major default of the partnership agreement and the investment agreement.

Attorney Walther cited the following acts, *inter alia*, of Dynes Corporation which National Corporation claimed constituted major default:

(1) failure to cure Dynes Partnership's delinquency on the mortgage loan for the project;

(2) failure to cure a notice of default filed by the mortgage company with the United States Department of Housing and Urban Development;

(3) failure to fully disclose financial and operating information respecting Dynes Partnership; and

(4) failure to permit the partners to have access to the books and records of Dynes Partnership.

In addition, Mark Walther stated in his letter that Dynes Corporation was removed as operating general partner of Dynes Partnership as of July 7, 1992.

As noted *supra*, appellants failed to oppose appellees' summary judgment motion. In *Morris v. Ohio Cas. Ins. Co.* (1988), 35 Ohio St.3d 45, 47, 517 N.E.2d 904, 907, the Ohio Supreme Court stated in relevant part as follows:

"[A]s the burden is upon the moving party to establish the non-existence of any material factual issues, the lack of a response by the opposing party cannot, *of itself*, mandate the granting of summary judgment." (Emphasis added.)

When a nonmoving party, however, fails to respond to a summary judgment motion, summary judgment is proper when reasonable minds can come to only one conclusion which is adverse to the nonmovant. *Morris, supra.*

In the case *sub judice*, although appellants failed to file a brief in opposition to summary judgment, appellants filed, as noted *supra*, evidentiary documents herein referred to as Appellants' Exhibits. Appellants' Exhibits contained the

expert reports of Attorney Stephen C. Weingrad and Attorney Charles Gruen-span each of which concluded, *supra,* that appellants were unable to comply with the terms of the investment agreement, and, therefore with the terms of the partnership agreement, due to the negligence of appellees National Partnership and National Corporation.

In addition, Appellants' Exhibits contained the affidavit of Dolores Thompson in which she stated that the erroneous tax ratio election had virtually put her out of business. Furthermore, Appellants' Exhibits provided a wealth of federal tax returns, financial statements and IRS rulings provided in support of appellants' basic contention in the case *sub judice, viz.,* that appellants were neither able to operate the project nor able to comply with the terms of the investment and partnership agreements due to the negligence of appellees National Partnership and National Corporation.

■ As noted in *Suter, supra,* where one party to a contract acts in such a manner so as to prevent another party to the contract from performing obligations arising under the contract, the actor cannot secure a benefit solely by virtue of the induced nonperformance.

In the case *sub judice,* a genuine issue of material fact thus remained to be litigated, *viz.,* whether or not appellees National Partnership and National Corporation negligently caused Dynes Corporation to materially breach the investment and partnership agreements. *Osborne, supra.* In accordance with *Suter, supra,* if appellees were the cause of the material breaches by Dynes Corporation which led to the removal of Dynes Corporation as operating general partner of Dynes Partnership, it follows that appellees could not legitimately remove Dynes Corporation as operating general partner of Dynes Partnership.

Upon viewing the foregoing evidence most strongly in favor of appellants, reasonable minds could not come to only one conclusion but, rather, could find for either Dynes Corporation or appellees. Clearly, if appellees induced the material breaches by Dynes Corporation, appellees were not entitled to summary judgment as a matter of law. *Osborne, supra; Suter, supra.* The trial court, therefore, erred when it granted appellees National Partnership and National Corporation summary judgment with respect to National Corporation's removal of Dynes Corporation as operating general partner of Dynes Partnership.

■ In their summary judgment motion, appellees also denied appellants' claim that National Corporation fraudulently misrepresented the removal of Dynes Corporation to tenants of the project and to the recorder's office.

■ The elements of the intentional tort of fraudulent misrepresentation follow: (1) the affirmative representation of a fact that is material to the transaction (a) which representation is expressed falsely with knowledge of the

falsity of the representation or expressed with such utter disregard and reckless-ness as to whether the representation is true or false that knowledge may be inferred (b) with the intent of misleading another into relying upon the represen-tation; (2) the justifiable reliance by the injured party upon the representation; and (3) an injury which is the proximate result of the injured party's reliance upon the representation. *State v. Warner* (1990), 55 Ohio St.3d 31, 564 N.E.2d 18.

In the case *sub judice,* appellants provided no evidence demonstrating that appellees knowingly made a false representation intending to mislead any person. Clearly, National Corporation attempted to exercise its rights in accordance with the terms of the investment and partnership agreements. In so doing, National Corporation believed it properly removed Dynes Corporation as operating gener-al partner of Dynes Partnership. In addition, appellants provided no specific evidence that the tenants of the project, the recorder's office or appellants themselves were misled or damaged as a proximate result of the representation. *Wing, supra; Shaw, supra.*

The trial court, therefore, did not err when it granted appellees summary judgment with respect to appellants' misrepresentation claim. Appellees were, therefore, entitled to summary judgment as a matter of law with respect to the misrepresentation claim since no genuine issues of material fact remained to be litigated. *Osborne, supra.*

Appellants' second assignment of error in Cuyahoga App. No. 66776, thus, has merit in part and lacks merit in part. This assignment of error is sustained with respect to appellants' claim the trial court erred when it granted summary judgment to appellees National Corporation and National Partnership concerning the removal of Dynes Corporation as operating general partner of Dynes Partnership by National Corporation. This assignment of error is overruled with respect to appellants' claim the trial court erred when it granted summary judgment to appellees on appellants' claim of fraudulent misrepresentation.

### *RE: THE GRANT OF SUMMARY JUDGMENT TO KLAIMAN*

In their second amended complaint, appellants commenced a malpractice action against Klaiman. Appellants contended that Klaiman negligently supervised Seikel's and SKC's preparation of Dynes Partnership's 1989 federal income tax return and that Klaiman, thereafter, filed the erroneous return with the IRS.

On May 3, 1993, Klaiman moved for summary judgment arguing, *inter alia,* as follows: (1) appellants failed to establish a *prima facie* case of malpractice against Klaiman; and (2) the trial court lacked *in personam* jurisdiction over Klaiman. Klaiman attached no evidentiary materials to its summary judgment motion.

Appellants filed a brief in response to Klaiman's summary judgment motion arguing, *inter alia*, as follows: (1) Klaiman's summary judgment motion should be denied since Klaiman failed to attach evidentiary materials to the motion; and (2) Klaiman had sufficient minimum contacts with the state of Ohio to warrant the trial court finding *in personam* jurisdiction. Appellants attached evidentiary materials to their opposition brief in accordance with *Wing, supra,* and *Shaw, supra, viz.,* copies of correspondence and a portion of Dynes Partnership's 1989 federal income tax return faxed from Klaiman to appellants.

On July 9, 1993, Klaiman moved the trial court to strike the evidentiary materials appellants attached to their opposition brief arguing the materials were not authenticated in accordance with Civ.R. 56(E). On August 23, 1993, the trial court granted Klaiman's motion to strike the evidentiary materials attached to appellants' opposition brief. In addition, the trial court granted Klaiman's summary judgment motion holding as follows:

"Deft. Kleinman [*sic*] Bush and Associates [*sic*] motion filed 5/3/93 for summary judgment is granted on the basis of lack of personal jurisdiction."

Appellants' fifth assignment of error raised in Cuyahoga App. No. 66171 follows:

"V. The trial court erred in granting Klaiman Bush's motion for summary judgment on the grounds of a lack of personal jurisdiction because there was a material issue of fact as to whether Klaiman Bush had sufficient contacts, including causing injury within Ohio, such that exercise of jurisdiction over them is reasonable."

This assignment has merit.

R.C. 2307.382, Ohio's longarm statute, states in relevant part as follows:

"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

"(1) Transacting any business in this state * * *."

In *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 480, the Ohio Supreme Court stated in relevant part as follows:

"It is clear that R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) are very broadly worded and permit jurisdiction over nonresident defendants who are *transacting any* business in Ohio. 'Transact' '* * * means to *prosecute negotiations; to carry on business; to have dealings * * *.*'" (Emphasis added in part.) See *Hammill Mfg. Co. v. Quality Rubber Prod., Inc.* (1992), 82 Ohio App.3d 369, 612 N.E.2d 472; *Columbus Show Case Co. v. CEE Contracting, Inc.* (1992), 75 Ohio App.3d 559, 599 N.E.2d 881.

R.C. 2307.382, *supra,* has been construed to extend *in personam* jurisdiction to the constitutional limits established by the Due Process Clause of the United States Constitution. *Gold Circle Stores v. Body Maven, Inc.* (S.D.Ohio 1988), 711 F.Supp. 897; *Mitchell's, supra; Hammill, supra; CEE, supra.*

In the case *sub judice,* it was undisputed that National Corporation was the tax matters partner of the Dynes Partnership. In addition, it was undisputed that National Corporation, acting in the capacity of tax matters partner of the Dynes Partnership, employed Klaiman to oversee the preparation and filing of Dynes Partnership's federal income tax returns.

In *Gold Circle, supra,* at 900, the federal district court stated in relevant part as follows:

"In this circuit, one has 'acted' so as to transact business in a state *'when obligations created by the defendant or business operations set in motion by the defendant* have a realistic impact on the commerce of that state.' Such 'acts' become purposeful if the defendant 'should have reasonably foreseen that the transaction would have consequences in that state.'" (Emphasis added.)

In the case *sub judice,* since National Corporation employed Klaiman on behalf of Dynes Partnership, Klaiman consequently was obligated to appellants who were residents of Ohio. By agreeing to accept responsibility over Dynes Partnership's tax accounting matters, Klaiman set into motion business operations between Klaiman and appellants who were residents of Ohio. Construing R.C. 2307.382, *supra,* to extend *in personam* jurisdiction to the constitutional limits of due process, it is clear that Klaiman carried on, *i.e.,* transacted business with appellants in Ohio. *Gold Circle, supra; Mitchell's, supra; Hammill, supra; CEE, supra.*

Evidence supporting the conclusion that Klaiman transacted business with appellants in Ohio was contained in the document herein referred to as Appellants' Exhibits. The evidence consisted of (1) a written statement by John Seikel indicating that SKC received a memo from Klaiman with respect to Dynes Partnership's IRS form 8609, *viz.,* the Low Income Housing Credit Allocation Certificate; and (2) a May 23, 1991 letter from Klaiman to Dolores Thompson addressing the filing of the 1990 Dynes Partnership federal income tax return. Appellants filed this evidence with the trial court on June 21, 1993 and appellees did not object to the authenticity of this evidence.

Based upon the foregoing analysis, it is therefore concluded that Klaiman transacted business in Ohio and was amenable to *in personam* jurisdiction in the case *sub judice, provided* the Due Process Clause of the United States Constitution was satisfied. The constitutional touchstone with respect to *in personam* jurisdiction is whether the defendant purposefully established minimum contacts

in the forum state. *Gold Circle, supra; Mitchell's, supra; Hammill, supra; CEE, supra.*

In *Gold Circle, supra,* 711 F.Supp. at 899, the United States District Court, S.D.Ohio, E.D., interpreting *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, stated in relevant part as follows:

"The Sixth Circuit has set forth three criteria to be satisfied in order to meet the 'minimum contacts' test of *International Shoe:*

"First, the defendant must *purposefully avail himself of the privilege of* acting in the forum state or *causing a consequence in the forum state.*

"Second, the cause of action must arise from the defendant's activities there.

"Finally, the acts of the defendant *or consequences caused by the defendant* must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. * * *

"If these three tests are met, then personal jurisdiction will be upheld unless traditional notions of fair play and substantial justice are offended. *The above formula is not to be applied mechanically but rather it is to be applied in light of all the particular facts in each case.*" (Emphasis added.)

In order to satisfy the first element of the *International Shoe* test, it must be demonstrated that the defendant purposefully availed himself of the privilege of acting in the forum state or causing a consequence in the forum state. *Gold Circle, supra.*

In *Hammill, supra,* 82 Ohio App.3d at 375, 612 N.E.2d at 476, the court cited to *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528, and stated in relevant part as follows:

" '[W]here the defendant "deliberately" has engaged in significant activities within a State * * * or *has created "continuing obligations" between himself and residents of the forum,* * * * he manifestly has availed himself of the *privilege of conducting business there,* and because his activities are shielded by "the benefits and protections" of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well.' " (Emphasis added.)

In the case *sub judice,* it has already been established that Klaiman, by accepting employment with National Corporation and, thus, obligating itself to oversee the preparation and filing of Dynes Partnership federal income tax returns, transacted business in Ohio with appellants. Since Klaiman created continuing obligations to Dynes Partnership, it is concluded that Klaiman purposefully availed itself of the commercial privileges to which *Hammill, supra,* and

*Gold Circle, supra,* make reference. The first element of the *International Shoe* test is, thus, satisfied.

In order to satisfy the second element of the *International Shoe* test, it must be demonstrated that the cause of action arose from the defendant's activities in the forum state. *Gold Circle, supra.*

When analyzing the activities of the defendant in the forum state, it is not necessary to conclude that a defendant was actually present physically in the forum state. On the contrary, it is sufficient to find only that a defendant's efforts were purposely directed toward residents of the forum state. *Gold Circle, supra; CEE, supra.*

In the case *sub judice,* appellants claimed that Klaiman was negligent in performing its accounting obligations to Dynes Partnership, *i.e.,* Klaiman (1) was negligent in supervising the preparation by Seikel and SKC of Dynes Partnership's 1989 federal income tax return; and (2) negligently filed the erroneous 1989 tax return.

Although no evidence was presented to demonstrate that Klaiman was ever physically present in Ohio, the cause of action in the case *sub judice* against Klaiman, *viz.,* malpractice, arose from Klaiman's activities which were purposely directed toward appellants who were residents of Ohio. In accordance with *Gold Circle, supra,* and *CEE, supra,* the second element of the *International Shoe* test, therefore, is satisfied.

In order to satisfy the final element of the *International Shoe* test, it must be demonstrated that the consequences caused by a defendant have a substantial enough connection with the forum state to make reasonable the exercise of *in personam* jurisdiction over the defendant. *Gold Circle, supra.*

Ohio has a significant interest in resolving lawsuits brought by its residents. *Gold Circle, supra.* The Ohio General Assembly, by enacting R.C. 2307.382, *supra,* demonstrated its intent to provide a forum in which Ohio residents could litigate against nonresident defendants. *Gold Circle, supra; Mitchell's, supra; Hammill, supra; CEE, supra.*

In the case *sub judice,* Dynes Partnership and Dynes Corporation are Ohio entities, Dolores and Robert Thompson are residents of Ohio and the project was located in Ohio. Furthermore, the project would have benefitted low income residents of Ohio. In addition, since Klaiman purposefully directed activities toward an Ohio partnership, Klaiman could reasonably anticipate being haled into an Ohio court of law. *Mitchell's, supra.*

Therefore, it is concluded that the alleged consequences caused by Klaiman do indeed have a substantial enough connection with Ohio to make the exercise of

jurisdiction over Klaiman reasonable. *Gold Circle, supra.* The final element of the *International Shoe* test is, thus, satisfied.

In summary, since Klaiman transacted business in Ohio, it is held that Ohio, by virtue of R.C. 2307.382, *supra,* possessed *in personam* jurisdiction over Klaiman with respect to the case *sub judice* and that Ohio's *in personam* jurisdiction over Klaiman did not violate the Due Process Clause of the United States Constitution in light of all the facts in the case *sub judice.* The trial court, thus, erred when it granted Klaiman's summary judgment motion on jurisdictional grounds. *Osborne, supra.*

Appellants' fifth assignment of error raised in Cuyahoga App. No. 66171 has merit and, therefore, is sustained.

In summary, the following assignments of error are sustained:

(1) In Cuyahoga App. No. 66171, Assignments of Error I, II, III, IV and V are sustained;

(2) In Cuyahoga App. No. 66632, Assignment of Error I is sustained; and

(3) In Cuyahoga App. No. 66776, Assignment of Error II is sustained in part.

The sustaining of the foregoing assignments of error effectively accomplishes the following:

(1) The August 23, 1993 grant of summary judgment to Seikel and SKC is reversed;

(2) The August 23, 1993 and December 17, 1993 grants of summary judgment to National Corporation and National Partnership are reversed; and

(3) The August 23, 1993 grant of summary judgment to Klaiman is reversed.

*Judgment affirmed in part,*
*reversed in part*
*and cause remanded.*

James D. Sweeney, P.J., and Harper, J., concur.