**HAMMILL MANUFACTURING COMPANY, Appellant,**

**v.**

**QUALITY RUBBER PRODUCTS, INC., Appellee.**

[Cite as *Hammill Mfg. Co. v. Quality Rubber Prod., Inc.* (1992), 82 Ohio App.3d 369.]

Court of Appeals of Ohio,
Lucas County.

No. L-91-308.

Decided Sept. 4, 1992.

*Tybo Alan Wilhelms,* for appellant.
*Margaret J. Lockhart,* for appellee.

---

GLASSER, Presiding Judge.

This is an appeal from a judgment of the Lucas County Court of Common Pleas dismissing the present action for lack of personal jurisdiction over appellee, Quality Rubber Products, Inc. ("QRP"). For the reasons discussed below, we reverse the decision of the trial court.

The facts of this case are as follows. Hammill Manufacturing Company ("Hammill") is an Ohio corporation with its principal place of business in Toledo, Ohio. Hammill is in the business of designing and manufacturing equipment for use in the packaging industry.

QRP is a California corporation and has its offices in Santa Cruz, California. QRP is in the business of manufacturing, packaging, and distributing rubber and other synthetic products. QRP is not authorized to do business or solicit business in Ohio. QRP has no office, no principal place of business, no employees and no agents in Ohio. In addition, QRP owns no property in Ohio and does not sell its products in Ohio. Therefore, QRP derives no revenues from Ohio. QRP has, prior to 1990, purchased supplies and other materials from Oak Rubber in Ravenna, Ohio. QRP also transacts business in Japan, Korea, and Great Britain.

Sometime prior to 1988, Hammill and QRP met at a trade show in Chicago. Hammill had a booth at the trade show where it displayed a packaging machine. QRP representatives attended the trade show, viewed Hammill's machine and exchanged some preliminary information. QRP requested that Hammill mail to it, in California, additional information. Hammill sent the additional information from Ohio to California.

In June 1988, QRP contacted Hammill in Ohio by telephone and solicited a quotation for an automatic bagging machine. Hammill sent the quotation from Ohio to California. QRP did not accept the quotation; however, it issued a purchase order for a revised system on July 29, 1988. During the time leading up to this purchase order, there were continuous negotiations between QRP and Hammill by telephone, mail, and other correspondence.

The packaging machine was designed and built in Ohio. QRP mailed three payments for the machine to Hammill in Ohio. The first payment was made on July 29, 1988, for $15,090; the second payment was made on August 22, 1988, for $15,090; the third and final payment was made on October 31, 1988, for $15,590. The machine was delivered from Ohio by Hammill to QRP in California on December 1, 1988.

QRP was dissatisfied with the performance of the machine. Hammill representatives traveled to the QRP facility in California to correct the alleged defects in the machine. There were additional discussions and negotiations between QRP and Hammill by use of the telephone, mail and other correspondence.

QRP finally returned the machine to Hammill in Ohio for further modifications in August 1989. Communications and negotiations continued. QRP representatives traveled to Ohio on at least two occasions to view the machine. QRP would not authorize the return of the machine until it viewed it in Ohio and the machine performed to its satisfaction.

When the QRP representatives returned to California, they mailed a letter, dated February 16, 1990, to Hammill in Ohio, summarizing the four items Hammill agreed to change on the machine before returning it to California. The letter also stated that if Hammill completed the four described items, QRP would stop all legal proceedings.

The machine was returned by Hammill from Ohio to QRP in California in March 1990. The machine still did not perform to QRP's satisfaction. On August 27, 1990, QRP sent a notice of rescission to Hammill in Ohio. An amended notice of rescission was mailed by QRP to Hammill in Ohio on August 30, 1990. In the notice, QRP alleged that Hammill had failed to perform under its agreement, that the machine had failed materially, that

QRP was entitled to return the machine to Hammill in Ohio, and that QRP was entitled to have Hammill reimburse QRP $55,458.03.

Hammill, in response to the amended notice of rescission, filed suit in the Lucas County Court of Common Pleas in Ohio on September 7, 1990, for a declaratory judgment that Hammill had performed each of its obligations required by the parties' agreement, that QRP's amended notice of rescission was null, void, and of no effect or consequence, and that Hammill had no further liability to QRP other than warranty responsibilities that Hammill undertook in the original agreement.

QRP then filed suit on October 4, 1990, in the Superior Court of California, County of Santa Cruz, for rescission of the contract, damages for breach of contract and/or damages for breach of express warranty.

Subsequently, QRP filed a motion to dismiss Hammill's complaint with the Lucas County Court of Common Pleas in Ohio on November 9, 1990, alleging that the court lacked personal jurisdiction over QRP. The Lucas County Court of Common Pleas granted QRP's motion and dismissed Hammill's action on July 30, 1991, holding that the court lacked personal jurisdiction over QRP.

Hammill appealed the trial court's decision to this court on August 28, 1991. It is from such judgment that Hammill raises the following sole assignment of error:

"The Trial Court Erred To The Substantial Prejudice of Hammill Manufacturing When It Determined That It Did Not Have Personal Jurisdiction."

Based on the Supreme Court of Ohio's decision in *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 479, "we must first decide whether [the foreign corporation's] conduct falls within Ohio's 'long arm statute' or applicable civil rule, and if the statute or civil rule confers personal jurisdiction, then we must determine whether granting jurisdiction comports with the Due Process Clause of the Fourteenth Amendment to the United States Constitution."

 In this appeal, personal jurisdiction over a nonresident defendant is governed by R.C. 2307.382, which states in relevant part:

"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

"(1) Transacting any business in this state;

" * * *

"(C) When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him."

Likewise, Civ.R. 4.3(A)(1) authorizes out-of-state service of process on a defendant who is "[t]ransacting any business in this state."

Appellant asserts that the initial contact between the parties, the negotiations that led to the agreement between QRP and Hammill, and the mailing of the three payments for the machine by QRP to Hammill in Ohio constitute transacting business in Ohio. In addition, Hammill contends that the subsequent actions of the parties, after the dispute concerning the machine's operation began, also constitute transacting business in Ohio.

Appellee contends that it simply had too few contacts with Ohio to make the exercise of jurisdiction over QRP reasonable. We disagree. Appellee relies heavily on *Ohio State Tie & Timber, Inc. v. Paris Lumber Co.* (1982), 8 Ohio App.3d 236, 238–239, 8 OBR 309, 311, 456 N.E.2d 1309, 1313, as did the trial court, which states:

"The ordering of goods from an Ohio resident by telephone from Kentucky by a Kentucky resident, which goods are to be shipped to Kentucky by the Ohio resident, does not constitute the transaction of business in Ohio by the Kentucky resident who ordered the goods, even though the goods had to be specially prepared to meet the needs of the Kentucky resident. This follows even if it could be found that such a transaction is of such a nature to create an impact on Ohio commerce. Under the Ohio rule, the issue is not whether the transaction created an impact on Ohio commerce but, instead, whether the non-resident transacted business in Ohio."

However, it is important to note that *Ohio State Tie & Timber* has been overruled by the Court of Appeals of Franklin County, which held:

"In light of the *Kentucky Oaks Mall* case, the Supreme Court of Ohio's current interpretation of R.C. 2307.382 and Civ.R. 4.3 seems to be that the statute and rule are intended to reach to the full outer limits of litigation which is permissible consistent with federal due process of law limitations. Thus, *Kentucky Oaks Mall* implicitly overrules our earlier opinion in *Ohio State Tie & Timber v. Paris Lumber* (1982), 8 Ohio App.3d 236, 8 OBR 309, 456 N.E.2d 1309." *Columbus Show Case Co. v. CEE Contracting, Inc.* (1992), 75 Ohio App.3d 559, 564, 599 N.E.2d 881, 884.

The Supreme Court of Ohio in *Kentucky Oaks Mall* stated at 53 Ohio St.3d at 75, 559 N.E.2d at 480:

"It is clear that R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) are very broadly worded and permit jurisdiction over nonresident defendants who are transact-

ing any business in Ohio. 'Transact,' as defined by Black's Law Dictionary * * * '* * * means to prosecute negotiations; to carry on business; to have dealings * * *. The word embraces in its meaning the carrying on or prosecution of business negotiations but it is a broader term than the word "contact" and may involve business negotiations which have been either wholly or partly brought to a conclusion * * *.' " (Emphasis deleted.)

In the case at bar, QRP negotiated the contract by telephone contact to Ohio with an Ohio-based corporation. QRP intentionally and voluntarily entered into a contract by issuing the purchase order in California and mailing it to Ohio. The document creates ongoing duties and obligations for the life of the contract. Undoubtedly, both parties sought the benefit of each other's bargains. The fact that QRP maintained no physical presence in Ohio for the initial contract does not preclude a finding that it transacted business in this state.

Thus, we are convinced that QRP's conduct falls unequivocally within the plain and broad language of R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1).

Accordingly, we hold that a corporate nonresident, for the purposes of personal jurisdiction, is "transacting any business," within the plain and common meaning of the phrase, where the nonresident corporation initiates, negotiates a contract, and through the course of dealing becomes obligated to make payments to an Ohio corporation.

■ Once having decided that the conduct of QRP falls within the purview of R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1), the question becomes whether the assertion of personal jurisdiction by an Ohio court over QRP comports with the Due Process Clause of the Fourteenth Amendment.

■ Over forty years ago, in *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95, 102, the court announced that a state may assert personal jurisdiction over a nonresident defendant if the nonresident has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' " (Citation omitted.) Since 1945, the court, on numerous occasions, has elected to address the Due Process Clause as it pertains to personal jurisdiction over a nonresident defendant. In particular, for purposes of this appeal, we turn our attention to *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528.

In *Burger King*, Rudzewicz, a franchisee residing in Michigan, was sued in Florida by Burger King, a Florida-based corporation, for breach of contract and trademark infringement. The contract was negotiated with both the Florida-based headquarters of Burger King and its Michigan district office.

The twenty-year lease provided that the relationship would be governed by Florida law and it required that all monthly fees and relevant notices be sent to the Florida headquarters. The court ruled that the assertion of jurisdiction did not offend due process because:

"Rudzewicz established a substantial and continuing relationship with Burger King's Miami headquarters, received fair notice from the contract documents and the course of dealing that he might be subject to suit in Florida, and has failed to demonstrate how jurisdiction in that forum would otherwise be fundamentally unfair * * *." *Id.* at 487, 105 S.Ct. at 2190, 85 L.Ed.2d at 550.

Justice Brennan, in writing for the majority of the court, reviewed prior cases and concluded that " * * * the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Id.* at 474, 105 S.Ct. at 2183, 85 L.Ed.2d at 542. The nonresident defendant has purposefully established minimum contacts "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." (Emphasis *sic.*) *Id.* at 475, 105 S.Ct. at 2184, 85 L.Ed.2d at 542. The court further held that "where the defendant 'deliberately' has engaged in significant activities within a State * * * or has created 'continuing obligations' between himself and residents of the forum, * * * he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." (Citations omitted.) *Id.* at 475–476, 105 S.Ct. at 2184, 85 L.Ed.2d at 543.

In light of the guidelines articulated above, and after a thorough review of the record before us, it is apparent that QRP purposely directed activities at an Ohio-based corporation, so that it could reasonably anticipate being haled into an Ohio court.

QRP initiated the contract and conducted negotiations of the contract terms by telephone with an Ohio-based corporation. QRP intentionally and purposely directed activities at Ohio when it agreed to the contract terms, issued the purchase order in California, and sent it to Ohio to be accepted by Hammill. The contract required Hammill to produce a packaging machine in Ohio and ship it to California. It also required Hammill representatives to go to California and install it. QRP was also required to make three payments by mailing checks from California to the Ohio-based appellant. Further, QRP representatives travelled to Ohio in order to examine the machine after

modifications were made by Hammill. Therefore, we hold that QRP had purposefully established minimum contacts with Ohio.

In *Burger King*, Justice Brennan also noted that the question of whether personal jurisdiction exists does not end with a finding that the nonresident defendant has purposely established minimum contacts and stated:

"Once it has been decided that a defendant purposefully established minimum contacts with the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.' * * * Thus courts in 'appropriate case[s]' may evaluate 'the burden on the defendant,' 'the forum State's interest in adjudicating the dispute,' 'the plaintiff's interest in obtaining convenient and effective relief,' 'the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.' * * * These considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts than would otherwise be required. * * * On the other hand, where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." (Citations omitted.) *Id.,* 471 U.S. at 476–477, 105 S.Ct. at 2184–2185, 85 L.Ed.2d at 543–544.

Having found that QRP purposely established minimum contacts with Ohio as set forth in *Burger King*, it now only remains to inquire whether the assertion of jurisdiction comports with "fair play and substantial justice."

Initially, we find that the burden on QRP is not excessive. Again, in *Burger King, supra,* at 474, 105 S.Ct. at 2183, 85 L.Ed.2d at 541, the court noted that "because 'modern transportation and communications have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity,' it usually will not be unfair to subject him to the burdens of litigating in another forum for disputes relating to such activity. *McGee v. International Life Insurance Co.* [ (1957), 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223]." QRP, a California corporation, has conducted business in Ohio with other corporations, traveled to Ohio on several occasions to view the machine, and traveled to the trade show in Chicago. In addition, QRP is involved in international sales in Korea, Great Britain, and Japan. Therefore, it is not unreasonable for QRP to defend itself in Ohio.

Further, Ohio's interest in adjudicating the dispute is strong. The General Assembly, pursuant to R.C. 2307.382(A)(1), intended to provide a forum for Ohio residents. Likewise, " * * * Ohio has an interest in resolving suits

brought by one of its residents and has a substantial interest in seeing that its residents get the benefit of their bargains." *Wright Internatl. Express, Inc. v. Roger Dean Chevrolet, Inc.* (S.D.Ohio 1988), 689 F.Supp. 788, at 791. Therefore, a finding of personal jurisdiction satisfies notions of fair play and substantial justice. Appellant's sole assignment of error is found well taken.

Accordingly, we reverse the judgment of the trial court and find that there is an adequate basis on which to assert personal jurisdiction over QRP. The cause is remanded to the trial court for further proceedings consistent with this opinion. It is ordered that appellee pay the court costs of this appeal.

*Judgment reversed*
*and cause remanded.*

HANDWORK and MELVIN L. RESNICK, JJ., concur.