RECORDS DEPOSITION SERVICE, INC., Appellee,

v.

HENDERSON & GOLDBERG, P.C., Appellant.

[Cite as *Records Deposition Service, Inc. v. Henderson & Goldberg, P.C.* (1995), 100 Ohio App.3d 495.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

No. 66746.

Decided Jan. 30, 1995.

*Donahue & Scanlon* and *Tim L. Collins,* for appellee.

*Goldberg, Persky, Jennings & White, P.C.* and *Bruce Carter,* for appellant.

KRUPANSKY, Judge.

Defendant-appellant Henderson & Goldberg, P.C. ("H & G") timely appeals from a judgment of the Cuyahoga County Common Pleas Court overruling H & G's Civ.R. 12(B)(2) motion for dismissal for lack of *in personam* jurisdiction and finding in favor of plaintiff-appellee Records Deposition Service, Inc. ("RDS").

H & G was a law firm based in Pittsburgh, Pennsylvania. Although H & G maintained an additional office in Saginaw, Michigan, H & G maintained no office in Ohio. Plaintiff-appellee Records Deposition Service, Inc. ("RDS") was a company which photocopied medical records for law firms to be used in litigation. Although RDS was based in Cleveland, Ohio, RDS opened, in 1990, an office in Pittsburgh, Pennsylvania.

Thereafter, in September 1991, H & G conferred with representatives from RDS in Pittsburgh and from other companies also offering photocopying services. On January 17, 1992, H & G reached an agreement with RDS in Pittsburgh which was memorialized in a letter from H & G to RDS. The letter was sent by Mark C. Meyer, an attorney employed by H & G, from H & G's Pittsburgh office to Dan Zalich, RDS's vice-president, at RDS's Pittsburgh office. It was undisputed H & G never dealt directly with RDS's Cleveland office but, rather, entered into the agreement with only RDS in Pittsburgh, Pennsylvania.

Meyer's letter confirmed a fee arrangement entered into by H & G and RDS with respect to certain named clients and stated in relevant part as follows:

"This is to confirm our telephone conversation of Monday, January 13 and Tuesday, January 14, 1992 regarding fees to be charged by Records Deposition Service for our *Cambria County* [Pennsylvania] clients." (Emphasis added.)

Thereafter, RDS provided photocopying services to H & G.

In June 1992, the cases referred to in the foregoing clause, *viz.*, the Cambria County cases, were settled out of court. H & G consequently notified RDS that its services were no longer required with respect to the Cambria County cases. However, the two parties could not agree upon the amount due RDS for photocopying services related to the Cambria County cases and the case *sub judice* was thereafter commenced.

H & G subsequently filed a motion to quash service and for dismissal pursuant to Civ.R. 12(B)(2), *i.e.*, for lack of *in personam* jurisdiction. In its brief in support of the motion to dismiss, H & G claimed, *inter alia*, as follows: (1) the contract between H & G and RDS, as evidenced by Meyer's letter, was executed and performed in Pennsylvania; (2) Meyer's letter expressly stated that RDS was to provide services with respect to only the Cambria County cases which were litigated in only Pennsylvania; and (3) H & G, with respect to the case *sub judice*, possessed no minimum contacts with Ohio. H & G attached Meyer's letter to its motion for dismissal.

RDS then filed a *memorandum* in opposition to H & G's motion for dismissal stating, *inter alia*, as follows: (1) one of H & G's attorneys, Thomas W. White, was licensed to practice law in Ohio; (2) at some point prior to institution of the case *sub judice*, H & G filed five cases in Franklin County Common Pleas Court;

and (3) RDS obtained, *via* its office in Cleveland, three medical records from University Hospitals of Cleveland which RDS provided to H & G. Relevant attachments to RDS's opposition *memorandum* included Meyer's letter and the affidavit of John Humbach which attested to the foregoing claims of RDS.

On December 10, 1993, a hearing was had in Cuyahoga County Common Pleas Court, where the following colloquy occurred:

"THE COURT: So the real issue here is not a matter of whether we are in two separate states, the real issue is whether the obligation is due. . . .

"MR. LAMPERT [defense counsel]: Okay. What we have here is a real issue of minimum contacts with the State of Ohio. The law firm is located in Pittsburgh, Pennsylvania. It entered into an agreement with Records Deposition Service, in Pittsburgh, all of which were in the State of Pennsylvania concerning various people who had asbestosis or were perhaps suffering from it.

"THE COURT: That is an extremely lucrative practice. It befuddles my imagination, and I use the 'befuddle'—I saw it in a Supreme Court opinion. It stretches my credulity, if they're engaged in asbestos litigation in several states, as I understand from reading the file that they are, that they would quibble over this $14,000.00 bill, the service [*sic*] that were rendered to them. . . .

"MR. LOUIK [defense counsel]: Because, frankly, Your Honor, our position is we have a significant argument to make of a personal jurisdiction.

"Now—

"THE COURT: Counsel, sit down. I am not going to argue with you over that. You insult our profession. You disgrace our profession, when you argue that you don't have to pay, except on your terms, for services rendered pursuant to an agreement that you drew—your law firm did.

"We expect that from people who are not members of an honored profession, but we don't expect it from lawyers.

"MR. LAMPERT: If I can speak on that, Your Honor, I have known Mr. Louik all my life. His father is a judge in Pennsylvania, and I have known both his father and Mr. Louik to represent absolutely the highest standards of practice.

"THE COURT: He isn't doing it in this case. He's quibbling over a matter of jurisdiction, when he ought to be discussing the resolution of this dispute. You are in a court of law and justice.

"Pennsylvania is not that far away. We don't have to get on a horse and ride a couple of days to get to Pittsburgh. It's just that simple, sir. So what has happened is that the cases have begun to shrink the distance among the greatest jurisdictions."

Thereafter, the trial court overruled H & G's Civ.R. 12(B)(2) motion and subsequently found for RDS in the amount of $14,263.49. H & G filed a timely appeal.

Appellant's first assignment of error follows:

"The trial court erred in overruling appellant's motion to quash service and dismiss for lack of personal jurisdiction."

This assignment has merit.

R.C. 2307.382, Ohio's long-arm statute, states in relevant part as follows:

"(A) A court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's:

"(1) Transacting any business *in* this state." (Emphasis added.)

In *Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.* (1990), 53 Ohio St.3d 73, 75, 559 N.E.2d 477, 479, the Ohio Supreme Court stated in relevant part as follows:

"It is clear that R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) are very broadly worded and permit jurisdiction over nonresident defendants who are *transacting any* business in Ohio. 'Transact * * * means to *prosecute negotiations;* to carry on business; *to have dealings * * *.'*" (Emphasis *sic.*) See *Hammill Mfg. Co. v. Quality Rubber Prod., Inc.* (1992), 82 Ohio App.3d 369, 612 N.E.2d 472.

R.C. 2307.382 has been construed to extend *in personam* jurisdiction to the constitutional limits established by the Due Process Clause of the United States Constitution. *Gold Circle Stores v. Body Maven, Inc.* (S.D.Ohio 1988), 711 F.Supp. 897; *Kentucky Oaks, supra; Hammill, supra.*

In *Gold Circle, supra,* at 900, the United States District Court stated as follows:

"In this circuit, one has 'acted' so as to transact business *in* a state 'when obligations created by the defendant or business operations set in motion by the defendant have a realistic impact on the commerce of that state.' Such 'acts' become purposeful if the defendant '*should have reasonably foreseen that the transaction would have consequences in that state.*'" (Emphasis added.)

In the case *sub judice*, the evidence demonstrated that although H & G retained an attorney licensed to practice law in Ohio and had, in fact, litigated in Ohio on a few previous occasions, the contract between H & G and RDS and the concomitant obligations accruing to H & G in the case *sub judice* were created solely in Pennsylvania rather than in Ohio. Essentially, H & G, a Pittsburgh, Pennsylvania company, entered into an agreement with RDS, a company conducting business from its office in Pittsburgh, Pennsylvania. In addition, the contract

was executed, performed and allegedly breached in Pennsylvania rather than in Ohio. Moreover, although RDS apparently obtained three medical records from University Hospitals of Cleveland, RDS contracted to provide services to H & G concerning only H & G's Pennsylvania clients.

Based upon the foregoing facts, it cannot be said that H & G carried on business or had dealings in Ohio, *i.e.*, it cannot be said H & G transacted business *in* Ohio. *Kentucky Oaks, supra; Hammill, supra;* R.C. 2307.382. Moreover, it cannot be said that H & G should have reasonably foreseen that its business transaction with RDS in Pittsburgh, Pennsylvania would have consequences in Ohio. *Gold Circle, supra.* Therefore, Ohio's long-arm statute did not permit the trial court to exercise *in personam* jurisdiction over H & G in the case *sub judice.*

■ Assume, *arguendo,* Ohio's long-arm statute did confer *in personam* jurisdiction over H & G. A finding of *in personam* jurisdiction pursuant to Ohio's long-arm statute would nevertheless have to satisfy due process. The constitutional touchstone with respect to *in personam* jurisdiction is whether the defendant purposefully established minimum contacts in the forum state. *Gold Circle, Kentucky Oaks* and *Hammill, supra.*

In *Gold Circle, supra,* 711 F.Supp. at 899, the district court, interpreting *Internatl. Shoe Co. v. Washington* (1945), 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95, stated as follows:

"The Sixth Circuit has set forth three criteria to be satisfied in order to meet the 'minimum contacts' test of *International Shoe:*

"First, the defendant must *purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state.*

"Second, *the cause of action must arise from the defendant's activities there.*

"Finally, the acts of the defendant or consequences caused by the defendant must have *a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.*

"If these three tests are met, *then personal jurisdiction will be upheld unless traditional notions of fair play and substantial justice are offended.* The above formula is not to be applied mechanically but rather it is to be applied in light of all the particular facts in each case." (Emphasis added.)

■ In order to satisfy the first prong of the *Internatl. Shoe* test, it must be demonstrated that H & G purposefully availed itself of the privilege of acting in the forum state or causing a consequence in the forum state. *Gold Circle, supra.*

In *Hammill, supra,* 82 Ohio App.3d at 375, 612 N.E.2d at 475–476, the court cited *Burger King Corp. v. Rudzewicz* (1985), 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528, and stated as follows:

"[W]here the defendant 'deliberately' has *engaged in significant activities within a State * * * or has created 'continuing obligations' between himself and residents of the forum, * * * he manifestly has availed himself of the privilege of conducting business there,* and because *his activities are shielded by 'the benefits and protections' of the forum's laws* it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." (Emphasis added.)

In the case *sub judice,* H & G did not engage in activities within Ohio. Moreover, the contract between H & G and RDS in the case *sub judice* did not constitute a vehicle by which H & G could avail itself of the privilege of conducting business in Ohio. The contract between RDS and H & G was executed, performed and allegedly breached in Pennsylvania. Thus, resolution of the case *sub judice* would have required an application of Pennsylvania contract law and not Ohio contract law. It cannot be said, therefore, that by entering into the agreement with RDS in Pittsburgh, H & G was shielded by the benefits and protections of Ohio law. *Hammill, supra.* The first element of the *Internatl. Shoe* criteria, therefore, was not satisfied. *Gold Circle, supra.*

In order to satisfy the second prong of the *Internatl. Shoe* test, it must be demonstrated that the cause of action in the case *sub judice* arose from H & G's activities in the forum state. *Gold Circle, supra.* It has already been demonstrated *supra,* however, that the cause of action in the case *sub judice* did not, in fact, arise from H & G's activities in Ohio. On the contrary, the cause of action in the case *sub judice* arose in only Pennsylvania from the execution and alleged breach of a contract between H & G and RDS in Pittsburgh. In addition, the goal of the contract was for H & G to secure photocopying services to be used during litigation in only Pennsylvania. It cannot be said, therefore, that the cause of action in the case *sub judice* arose from H & G's activities in Ohio. The second element of the *Internatl. Shoe* criteria, therefore, was not satisfied. *Gold Circle, supra.*

In order to satisfy the third prong of the *Internatl. Shoe* test, it must be demonstrated that H & G's acts or the consequences caused by H & G had a substantial enough connection with the forum state to make the exercise of jurisdiction over H & G reasonable. *Gold Circle, supra.* Based upon the foregoing facts, however, it cannot be said that the transactions and occurrences in the case *sub judice, i.e.,* the execution and alleged breach of the contract between H & G and RDS, were at all connected with Ohio. Ohio, frankly, has no interest in the outcome of a contractual dispute between Pennsylvania companies. It cannot be said, therefore, that H & G's acts or the resulting consequences had a substantial enough connection with Ohio to make the exercise of *in personam*

jurisdiction *reasonable*. *Gold Circle, supra*. The third and final element of the *Internatl. Shoe* criteria, therefore, was not satisfied. *Gold Circle, supra*.

It can be said, however, that permitting Ohio to exercise *in personam* jurisdiction over H & G offended traditional notions of fair play and substantial justice. *Gold Circle, supra*. This was not a case where a nonresident conducted a solicitation campaign to attract Ohio customers or sold insurance *via* the mail in Ohio or manufactured an automobile part which foreseeably found its way into Ohio. H & G sought merely to enter into a business transaction with a local Pittsburgh, Pennsylvania company and it did just that.

Based upon the foregoing analyses, the trial court erred when it overruled H & G's motion for dismissal due to lack of *in personam* jurisdiction. Despite the trial court's keen observation that "we don't have to get on a horse and ride a couple of days to get to Pittsburgh," the distance between Cleveland, Ohio and Pittsburgh, Pennsylvania was simply not the issue. On the contrary, the issue was whether Ohio's exercise of *in personam* jurisdiction over H & G was consistent with Ohio's long-arm statute and due process.

We have held that such exercise was not consistent with Ohio's long-arm statute or with due process. However, the foregoing colloquy, contained herein, suggests the trial judge was more intent upon resolving the case *sub judice* on its merits rather than determining the prerequisite jurisdictional issue involved.

Since the trial court lacked *in personam* jurisdiction to adjudicate the case *sub judice*, all the trial court's orders were void *ab initio*. Therefore, appellant's remaining assignments of error, which are contained in the attached appendix, are rendered moot and need not be considered. App.R. 12(A)(1)(c).[1]

Judgment reversed. Case dismissed for lack of *in personam* jurisdiction pursuant to Civ.R. 12(B)(2).

*Judgment accordingly.*

HARPER, P.J., and NUGENT, J., concur.

### APPENDIX

Appellant's remaining assignments of error follow:

"II. The trial court erred in deeming admitted appellant's responses to appellee's requests for admissions.

"III. The trial court erred in *sua sponte* granting summary judgment.

---

1. App.R. 12(A) states in relevant part as follows: "(1) On an undismissed appeal from a trial court, a court of appeals shall do all of the following: * * * (c) Unless an assignment of error is made moot by a ruling on another assignment of error, decide each assignment of error and give reasons in writing for its decision."

"IV. The trial court erred in denying the motion to admit attorney Howard M. Louik *pro hac vice.*"