OPINION.
{¶ 1} Plaintiff-appellant Interior Services, Inc., (ISI) appeals the trial court's grant of defendant-appellee Terrance J. Iverson's motion to dismiss due to lack of personal jurisdiction. ISI received several orders for office chairs and delivered them, but did not receive payment. ISI sued four parties: Event Supply Company, Kruse-Iverson Companies, Inc., Todd M. Kruse, and Iverson. ISI obtained a default judgment against Kruse. But Iverson successfully moved for dismissal. The case against the other two defendants is stayed, pending the outcome of ISI's appeal. We affirm.
 {¶ 2} Arrowhead Purchases Chairs from ISI ISI alleges that Kruse,representing Arrowhead Design Group, telephoned ISI, an Ohiocorporation, and expressed an interest in ordering office chairs. Krusesubmitted an application for credit to ISI that indicated that Arrowheadwas a corporation, and that included signatures of Kruse as ChiefFinancial Officer and Treasurer, and Iverson as CEO and President. Atthat time, the business name of Arrowhead Design Group was registered toKruse-Iverson Companies, Inc., which had its principal place of businessin Minnesota. The name was also registered to Iverson and Kruse asindividuals, who were both Minnesota residents.
 {¶ 3} Arrowhead's first order was for 48 office chairs, at a total cost of $27,912.98. The next order, for 31 office chairs, totaled $17,244.08. For both orders, ISI timely received a wire transfer for the total purchase price from Iverson's personal bank account, that is, a bank account held under the name "Terry Iverson DBA Event Supply Company." Iverson stated in his answers to discovery requests that Event Supply Company was a sole proprietorship owned by him at the time of these payments.
 {¶ 4} ISI received another order for office chairs from Arrowhead, which ISI delivered. When payment was not received, ISI contacted Arrowhead, finally speaking to Iverson at least three times about the delay in payment. Iverson stated that he knew ISI was owed money and that he needed to get to the bank. ISI then received payment by a wire transfer originating from Kruse.
 {¶ 5} At about this time, unknown to ISI, Kruse resigned from Kruse-Iverson Companies, Inc., and began his own separate business as a sole proprietor, under the name Nervetec-Vector Companies. Iverson incorporated Event Supply Company, which had previously been Iverson's sole proprietorship, and changed the name of Kruse-Iverson Companies, Inc., to Event Supply Company. Iverson then began operating Event Supply Company under the name Arrowhead Design Group.
 {¶ 6} ISI continued to receive orders from Kruse for office chairs on Arrowhead Design Group fax sheets over the next four months, for which Kruse paid. Iverson alleged that Kruse and his new business continued to order chairs from ISI with the plan of selling them on the Internet, something that Iverson knew nothing about. After several months, ISI fulfilled several orders from Kruse, but did not receive payment for them. ISI unsuccessfully attempted to contact Kruse and talked to Iverson concerning the delinquent payment. Iverson did not mention that Kruse was no longer working with him, nor did he say anything to disavow responsibility for payment for the chairs. The next month, however, Iverson told ISI that Kruse no longer worked with his company and that he was not responsible for the chair purchases, totaling over $44,000.
Two-Part Inquiry for Personal Jurisdiction
 {¶ 7} The only issue before us now is whether an Ohio court may exercise personal jurisdiction over Iverson, as an individual, based on his dealings with ISI. Where a defendant asserts that the court lacks personal jurisdiction over him, the plaintiff has the burden to establish the court's jurisdiction.[1] It appears that the trial court did not hold an evidentiary hearing on Iverson's Civ. R. 12(B)(2) dismissal motion. Therefore, the court was required to view allegations in the pleadings and the documentary evidence in a light most favorable to ISI, the non- moving party, resolving all reasonable competing inferences in its favor.[2] In the absence of a hearing, ISI had only to make a prima facie case to demonstrate jurisdiction in order to defeat the motion to dismiss.[3] Because the trial court's determination whether personal jurisdiction over a party exists is a question of law, we review the trial court's grant of Iverson's Civ. R. 12(B)(2) motion de novo.[4]
 {¶ 8} There is a two-step analysis for determining whether the court has personal jurisdiction over a nonresident defendant.[5] First, the court must determine whether the state's long-arm statute and applicable civil rule confer personal jurisdiction, and, if so, it must next determine whether granting jurisdiction under the statute and the rule would deprive the defendant of due process of law under theFourteenth Amendment to the United States Constitution.[6]
 {¶ 9} The complementary provisions of Ohio's long-arm statute, R.C. 2307.382(A)(1) and Civ. R. 4.3(A)(1), authorize a court to exercise personal jurisdiction over a nonresident defendant and provide for service of process to carry out that jurisdiction when the cause of action arises from the nonresident defendant's "[t]ransacting any business in this state[.]"[7] Because the phrase "transacting any business" is so broad, the statute and rule have given rise to a variety of cases that have been resolved on "highly particularized fact situations, thus rendering any generalization unwarranted."[8] The court must, therefore, rely on a case-by-case determination whether the nonresident defendant has transacted business in Ohio.[9]
 Iverson Did Not Transact Business in Ohio
 {¶ 10} ISI argues that the phrase "transacting business" has been interpreted very broadly and includes not only contracts, but also any business negotiations or dealings. ISI cites several cases where the requirement of transacting business was satisfied by corporate negotiations conducted over the telephone that resulted in enforceable contracts.
 {¶ 11} In Kentucky Oaks Mall Co. v. Mitchell's Formal Wear,Inc.,[10] the court held that the nonresident corporate defendant transacted business in Ohio when it negotiated a lease over the telephone and became obligated to make payments to its lessor in Ohio. InHammill Manufacturing Company v. Quality Rubber Products, Inc.,[11]
the court held that a nonresident corporate defendant transacted business in Ohio when it initiated negotiations that led to a contract and through a course of dealing became obligated to make payments to an Ohio corporation. In both cases, the courts stressed that there was no need for physical presence in the state, but that the key consideration was that the nonresident corporation intentionally and voluntarily entered into a contract that created ongoing duties and obligations for the life of the contract, and that both parties sought the benefit of each other's bargain in hopes of realizing a pecuniary gain.[12]
 {¶ 12} The difficulty with ISI's attempt to analogize its facts with Kentucky Oaks and Hammill is that ISI blurs the line between actions taken by Iverson as an individual and those taken by Iverson in his corporate capacity. We have no doubt that, based on the above precedents, the repeated negotiations, orders, purchases, and payments made between the two corporate entities, initially ISI and Kruse-Iverson Companies, Inc., and later ISI and Event Supply Company, that personal jurisdiction existed over the nonresident corporate defendants. But in determining personal jurisdiction over Iverson as an individual, we must look at his actions taken only as an individual.
 {¶ 13} The only reason to look beyond Iverson's actions as an individual would be if there were grounds to pierce the corporate shield. Though the fiduciary-shield doctrine provides that corporate employees performing acts in their corporate capacity are not subject to the personal jurisdiction of a court for such acts, a corporate officer may be personally liable for acts of fraud.[13] Nonetheless, ISI has made no allegations and nothing in the record would support that Iverson's actions rose to the level of fraud.
 {¶ 14} ISI has also not made any allegations that Kruse-Iverson Companies, Inc., or Event Supply Company is a sham entity that should be disregarded or that those companies are alter egos of Iverson. There are only two instances of possible corporate misconduct that indicate that Iverson may not have adequately kept the distinction between his corporate and personal actions clear. The instances are the two wire transfers from Iverson's personal bank account, and the fact that the business name of Arrowhead Design Group was registered to Iverson as an individual at the time of the wire transfers.
 {¶ 15} While the business name of Arrowhead Design Group was registered to Iverson as an individual at the time of the wire transfers, it was also registered to Kruse-Iverson Companies, Inc. An affidavit by ISI's attorney indicated that Iverson and Kruse registered the name of Arrowhead Design Group before they created Kruse-Iverson Companies, Inc., and that once they created the corporation, the corporation registered Arrowhead Design Group as a business name. But ISI stated in its original complaint that it believed that Arrowhead was a corporation. This was supported by Arrowhead's original credit application, which stated that Arrowhead was a corporation. Therefore, the name registration to Iverson as an individual is a weak indication that Iverson failed to carefully observe a distinction between his corporate and personal actions.
 {¶ 16} But because a sole proprietorship has no legal identity separate from that of the individual, the payments Iverson made from the Event Supply Company account before its incorporation must be considered as if they had been made by Iverson personally.[14] Therefore, the two wire transfers do support the contention that Iverson failed to maintain a proper corporate and personal distinction.
 {¶ 17} But we conclude that the wire transfers alone were not enough to establish corporate misconduct or to justify piercing the corporate shield. As a result, we must not look at actions taken by Iverson in his corporate capacity in our determination of personal jurisdiction. Therefore, corporate actions, such as the phone conversations Iverson had with ISI, are not relevant in this inquiry.
 {¶ 18} Iverson's only personal actions those not taken in his corporate capacity were the two wire transfers from his personal bank account. We conclude that the two isolated money transfers were simply not enough to show that Iverson had personally transacted business within Ohio.Kentucky Oaks and Hammill stand for the proposition that once a nonresident corporation takes on some type of obligation under a contract, it has transacted business. While Iverson offers no explanation why he chose to pay the corporate debt with funds from his personal bank account, he was never under an obligation to do so.
 {¶ 19} Courts of this state have often applied a slightly different standard to evaluate the transaction of business by an individual as opposed to a corporation.[15] An example is Kleinfeld v.Link,[16] where the court held that a "one-shot" deal between two private individuals did not constitute transacting business. The fact that Iverson made two payments from his personal bank account to an Ohio corporation to cover a corporate transaction were isolated events with no further ramifications. Iverson, therefore, was not personally transacting business in Ohio.
No Minimum Contacts
 {¶ 20} The personal-jurisdiction analysis concludes when the plaintiff fails to satisfy the long-arm statute by failing to establish that the defendant transacted any business in Ohio. But even if we were to conclude that Iverson did personally transact business in Ohio, ISI still would have to show that the exercise of personal jurisdiction over Iverson comports with the requirements of due process.
 {¶ 21} The United States Supreme Court has held that a state is permitted to assert personal jurisdiction over a nonresident defendant if the nonresident has "certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'"[17] The Ohio Supreme Court has noted that the concept of minimum contacts serves two functions.[18] First, it protects the nonresident defendant "against the burdens of litigating in a distant or inconvenient forum."[19] Second, it ensures that the states do not encroach on each other's sovereign interests.[20]
 {¶ 22} Under the International Shoe doctrine, a nonresident defendant has purposefully established minimum contacts "* * * where the contacts proximately result from actions by the defendant himself that create a `substantial connection' with the forum State * * *, where the defendant `deliberately' has engaged in significant activities within a State * * * [,] or has created `continuing obligations' between himself and residents of the forum * * *[, or where] he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by `the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in the forum as well."[21] Once it has been decided that a defendant has purposefully established minimum contacts within the forum state, the contacts must be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with "fair play and substantial justice."[22]
 {¶ 23} Under these guidelines, it is apparent that Iverson did not create a substantial connection with Ohio, nor did he engage in substantial activities or create continuing obligations in Ohio. The two isolated payments that Iverson made to ISI were not enough to satisfy the requisite minimum contacts with Ohio. In addition, we conclude that Iverson did not engage in activities that would have caused him to reasonably anticipate being personally hailed into court in Ohio. Therefore, asserting personal jurisdiction over Iverson would not comport with the traditional notions of "fair play and substantial justice."
 {¶ 24} Viewing the allegations in the pleadings and the documentary evidence in a light most favorable to ISI and resolving all reasonable competing inferences in ISI's favor, we conclude that ISI did not make the required prima facie showing of personal jurisdiction for the purpose of withstanding Iverson's motion to dismiss. Thus, the trial court did not err in dismissing ISI's complaint under Civ. R. 12(B)(2) for lack of personal jurisdiction.
 {¶ 25} We note, however, that the trial court erred when it dismissed the action with prejudice.[23] "A successful Rule 12(B)(2) motion will normally result in an order dismissing the action, but should not prejudice the plaintiff's action on the merits and his right to either seek leave to amend his complaint or to file another complaint."[24] In addition, under Civ. R. 41(B)(4)(a), a dismissal for lack of personal jurisdiction operates as a failure otherwise than on the merits. Therefore, the trial court's judgment is affirmed with a modification to reflect a dismissal of ISI's complaint without prejudice.
Judgment affirmed as modified.
Sundermann, P.J., and Winkler, J., concur.
[1] See Giachetti v. Holmes (1984), 14 Ohio App.3d 306, 307,471 N.E.2d 165.
[2] See Goldstein v. Christiansen, 70 Ohio St.3d 232, 236,1994-Ohio-229, 638 N.E.2d 541; Giachetti v. Holmes, supra, at 307.
[3] See Giachetti v. Holmes, supra, at 307.
[4] See Information Leasing Corp. v. Baxter, d.b.a Kenny's PitStop, 1st Dist. No. C-020029, 2002-Ohio-3930, at ¶ 4 ; Wiltbergerv. Davis (1996), 110 Ohio App.3d 46, 51-52, 673 N.E.2d 628.
[5] See U.S. Sprint Communications Co. v. Mr. K's Foods, Inc.,68 Ohio St.3d 181, 183, 1994-Ohio-504, 624 N.E.2d 1048.
[6] Id. at 184.
[7] Id.
[8] See U.S. Sprint Communications Co. v. Mr. K's Foods, Inc., supra, at 185, quoting 22 Ohio Jurisprudence 3d (1980) 430, Courts and Judges, Section 280.
[9] See U.S. Sprint Communications Co. v. Mr. K's Foods, Inc., supra, at 185.
[10] (1990), 53 Ohio St.3d 73, 559 N.E.2d 477.
[11] (1992), 82 Ohio App.3d 369, 612 N.E.2d 472.
[12] See Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc.
(1990), 53 Ohio St.3d 73, 76, 559 N.E.2d 477; Hammill Manufacturing Co.v. Quality Rubber Products, Inc. (1992), 82 Ohio App.3d 369, 374,612 N.E.2d 472.
[13] See Heritage Funding Leasing Co. v. Phee (1997),120 Ohio App.3d 422, 430, 698 N.E.2d 67.
[14] See Patterson v. VM Auto Body (1992), 63 Ohio St.3d 573,574-575, 589 N.E.2d 1306.
[15] See Nationwide Mutual Insurance Co. v. Baker (1995),105 Ohio App.3d 336, 340, 663 N.E.2d 1325.
[16] (1983), 9 Ohio App.3d 29, 457 N.E.2d 1187. See, also, Molzv. Magdych (Aug. 23, 1996), 11th Dist. No. 96-T-5396.
[17] See Internatl. Shoe Co. v. Washington (1945), 326 U.S. 310, 316,66 S.Ct. 154.
[18] See U.S. Sprint Communications Co. v. Mr. K's Foods, Inc., supra, at 186.
[19] Id., citing World-Wide Volkswagen Corp. v. Woodson (1980),444 U.S. 286, 292, 100 S.Ct. 559.
[20] Id.
[21] See Kentucky Oaks Mall Co. v. Mitchell's Formal Wear, Inc., supra, at 77, quoting Burger King Corp. v. Rudzewicz (1985), 471 U.S. 462,475-76, 105 S.Ct. 2174.
[22] Id.
[23] See Jurko v. Jobs Europe Agency (1975), 43 Ohio App.2d 79,87-88, 334 N.E.2d 478.
[24] Id. at 88. See, also, CTI Audio, Inc. v. Fritkin-Jones DesignGroup (2001), 144 Ohio App.3d 449, 453, 760 N.E.2d 842.