[Cite as *Ohlman Farm & Greenhouse, Inc. v. Kanakry*, 2014-Ohio-4731.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

Ohlman Farm & Greenhouse, Inc.                     Court of Appeals No. L-13-1264

    Appellee                                                 Trial Court No. CI0201105977

v.

Michael M. Kanakry d/b/a
M&M Garden Center, et al.                           **DECISION AND JUDGMENT**

    Appellants                                               Decided:  October 24, 2014

* * * * *

Gregory L. Arnold, for appellee.

Bradley M. D'Arcangelo, for appellants.

* * * * *

**JENSEN, J.**

## Introduction

**{¶ 1}** This is an appeal from a judgment by the Lucas County Court of Common

Pleas. Following a bench trial, the trial court found in favor of appellee, Ohlman Farm &

Greenhouse, Inc. and awarded it $33,952.33 against Michael D. Kanakry, individually.

The award reflects the amount owed to appellee for goods that it delivered to appellants' retail flower stores in Warren and Frazier, Michigan. Appellants concede the debt, but claim that the trial court lacked personal jurisdiction over them and that appellant, Michael M. Kanakry, cannot be held personally liable. For the reasons that follow, we affirm the trial court.

**Factual Background and Procedural History**

{¶ 2} Lawrence J. Ohlman, Jr. is the president and sole shareholder of appellee, Ohlman Farm & Greenhouse, Inc., a wholesaler of flower and vegetable plants, located in Toledo, Ohio. In April of 2011, Ohlman, on behalf of appellee, and Michael D. Kanakry orally contracted for appellee to sell and deliver flowers to two retail flower stores operated by Mr. Kanakry in Michigan.

{¶ 3} The parties' business relationship first began in 2010 with a single delivery by appellee to one of Mr. Kanakry's stores. About a year later, on April 17, 2011, Kanakry visited appellee's wholesale facility in Toledo, Ohio for the "limited" purpose of "viewing [appellee's] products for the potential purchase." In the days that followed, Kanakry and Ohlman had several telephone conversations during which they arranged for appellee to deliver several shipments of flowers to appellants' retail stores in Warren and/or Frazier, Michigan.

{¶ 4} In all, appellee made five deliveries from its Toledo, Ohio nursery to appellants' Michigan stores between April 20 and May 5, 2011. Following each delivery, appellee presented an invoice to Kanakry for payment. Appellee addressed each invoice

2.

to "M&M Gardens." Ohlman testified that he believed he was doing business with Kanakry as an individual, who was doing business as "M&M Gardens."

{¶ 5} Kanakry acknowledged delivery of the goods by initialing four of the five receipts. Nowhere on the invoices did Kanakry take issue with "M&M Gardens" until receipt of the last invoice, dated May 5, 2011. On that invoice, Kanakry crossed off "M&M Gardens" and wrote in its place "Flower Time not M&M." He also rejected part of the shipment and claimed a credit of $1,721.25.

{¶ 6} The invoices went unpaid. On October 13, 2011, appellee filed suit in the Lucas County Court of Common Pleas against Michael Kanakry, dba M&M Garden Center and Kanakry Enterprises, Inc., dba M&M Garden Center. Appellee demanded judgment in the amount of $35,673.58, the total unpaid balance.

{¶ 7} On February 13, 2012, the two named defendants filed a motion to dismiss the case for want of personal jurisdiction and improper venue, pursuant to Civ.R. 12(B)(2) and (3), respectively. The defendants argued that Kanakry's lone visit to Ohio did not constitute "transacting any business" in the state and therefore the case ought to be dismissed.

{¶ 8} By order dated August 8, 2012, the trial court denied the defendants' motion to dismiss. On November 9, 2012, appellee filed an amended complaint adding "Warren Flower Time, LLC" and "Michael M. Kanakry dba Flower Time, LLC" as defendants.

3.

**{¶ 9}** A bench trial was held on October 10, 2013.  At trial, defendants-appellants argued that because appellee specified "M&M Gardens" and not "Michael Kanakry" on the invoices, it could not now claim that Mr. Kanakry ought to be held personally liable.

**{¶ 10}** Exhibits in the trial court record established that, since 2005, Kanakry operated three distinct businesses within the state of Michigan.  From January 6, 2005 until July 15, 2013, Kanakry was the sole shareholder of Kanakry Enterprises, Inc.  Between April 12, 2010 and July 15, 2013, he was the sole shareholder of "Mr. Mike's M&M Garden Center, Inc."  Finally, on October 18, 2010, Kanakry created a third business, called "Warren Flower Time LLC."  Thus, according to the record, at the time appellee and Kanakry negotiated for the sale and purchase of flower deliveries, Kanakry was the sole shareholder of three businesses:  Kanakry Enterprises, Inc., Warren Flower Time, LLC, and Mr. Mike's M&M Garden Center, Inc.[1]  He argues that the latter two ought to be found jointly and severally liable for the unpaid invoices.

**{¶ 11}** Mr. Ohlman testified that he believed he was doing business with appellant, Kanakry, as an individual who was doing business as "M&M Gardens."  Indeed, despite the multiple changes in legal status, Kanakry testified that "I have been in business for 20 years, and I am known as M&M Gardens * * *."

**{¶ 12}** Kanakry conceded that he never advised appellee that he, Kanakry, was acting on behalf of a legal entity, whether a corporation or a limited liability company.  Further, Kanakry never provided appellee with any documentation, such as business

---

[1] Mr. Mike's M&M Garden Center, Inc. is not a named defendant in this case.

4.

cards or stationery, indicating to appellee that he was acting on behalf of either Mr. Mikes M&M Garden Center, Inc. or Warren Flower Time LLC.

{¶ 13} On the other hand, Mr. Kanakry testified that his business displayed the name "Mr. Mike's M&M Garden Center, Inc." on a sign inside his tent and via the posting of an eight by ten inch occupancy permit near the cash register. Mr. Kanakry claims he displayed the name "Warren Flower Time LLC" in the same manner. No evidence was presented, however, that Mr. Ohlman or anyone representing appellee was aware of the signs.

{¶ 14} By judgment entry dated October 24, 2013, the trial court awarded $33,952.33 in damages to appellee ($35,673.58 minus the credit amount of $1,721.25). The court "resolved all issues regarding witness credibility and the weighing of the evidence in a manner consistent with these findings."

{¶ 15} On November 22, 2013, appellants filed a notice of appeal, raising two assignments of error:

> Trial Court Erred in Denying Motion to Dismiss Pursuant to Civ. R. 12(B)(2) & (3) Finding Defendants had Sufficient Contacts In This Forum To Exercise Personal Jurisdiction and Venue.

> Trial Court Erred in Finding Individual Liability of Michael D. Kanakry For The Judgment Awarded To Plaintiff.

**Appellants' Motion to Dismiss**

{¶ 16} Civ.R. 12(B) provides that "every defense, in law or fact, to a claim for relief in any pleading * * * shall be asserted in the responsive pleading thereto if one is required, except that the following may at the option of the pleader be made by motion: (2) lack of jurisdiction over the person, (3) improper venue * * *." Where the motion is decided without hearing, the trial court is "to view allegations in the pleadings and the documentary evidence in a light most favorable to the plaintiffs, resolving all reasonable competing inferences in their favor." *Goldstein v. Christiansen,* 70 Ohio St.3d 232, 236, 638 N.E.2d 541 (1994).

{¶ 17} "Personal jurisdiction is a question of law that appellate courts review de novo." *Kauffman Racing Equip., L.L.C. v. Roberts,* 126 Ohio St.3d 81, 2010-Ohio-2551, 930 N.E.2d 784, ¶ 27.

{¶ 18} The trial court found that appellee "established sufficient minimum contacts of the [appellants] in this forum for the Court to exercise personal jurisdiction over it [sic] and that venue is proper in Lucas County, Ohio." Accordingly, the court denied defendants-appellants' motion to dismiss pursuant to Civ.R. 12(B)(2) and (3).

> When determining whether a state court has personal jurisdiction over a foreign corporation the court is obligated to engage in a two-step analysis. First, the court must determine whether the state's 'long-arm' statute and applicable civil rule confer personal jurisdiction, and, if so, whether granting jurisdiction under the statute and the rule would deprive

6.

the defendant of the right to due process of law pursuant to the Fourteenth Amendment to the United States Constitution. (Footnote omitted.) *U.S. Sprint Communications Co. Ltd. Partnership v. Mr. K.'s Foods, Inc.,* 68 Ohio St.3d 181, 183-184, 624 N.E.2d 1048 (1994).

{¶ 19} Pursuant to Ohio's long-arm statute, "[a] court may exercise personal jurisdiction over a person who acts directly or by an agent, as to a cause of action arising from the person's: (1) Transacting any business in this state; * * *." R.C. 2307.382(A)(1). "When jurisdiction over a person is based solely upon this section, only a cause of action arising from acts enumerated in this section may be asserted against him." R.C. 2307.382(C).

{¶ 20} Likewise, Civ.R. 4.3(A)(1), pertaining to venue, authorizes out-of-state service of process on a defendant who is "[t]ransacting any business in this state[.]" "[T]he statute and civil rule are consistent and in fact complement each other. R.C. 2307.382(A)(1) authorizes a court to exercise personal jurisdiction over a nonresident defendant, whereas Civ.R. 4.3(A)(1) provides for service of process to effectuate that jurisdiction. Both require that the nonresident defendant be 'transacting any business' in Ohio." *Kentucky Oaks Mall v. Mitchell's*, 53 Ohio St.3d 73, 75, 559 N.E.2d 477 (1990).

{¶ 21} As explained in *Kentucky Oaks,* the term "transacting any business" is broad in its reach:

It is clear that R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1) are very broadly worded and permit jurisdiction over nonresident defendants who

7.

are *transacting any* business in Ohio. "Transact," as defined by Black's Law Dictionary (5 Ed.1979) 1341, "* * * means to *prosecute negotiations; to carry on business; to have dealings * * *.* The word embraces in *its meaning the carrying on or prosecution of business negotiations* but it is a *broader term than the word 'contract' and may involve business negotiations* which have been either wholly or partly brought to a conclusion * * *." (Emphasis added.) *Id.* at 75.

{¶ 22} In the wake of *Kentucky Oaks,* this court held, "that a corporate nonresident, for the purposes of personal jurisdiction, is 'transacting any business,' within the plain and common meaning of the phrase, where the nonresident corporation initiates, negotiates a contract, and through the course of dealing becomes obligated to make payments to an Ohio corporation." *Hammill Mfg. Co. v. Quality Rubber Prod., Inc.,* 82 Ohio App.3d 369, 374, 612 N.E.2d 472 (6th Dist.1992).

{¶ 23} Turning to the facts of this case, appellant Kanakry visited appellee's Toledo store on April 17, 2011, just three days before the first delivery of flowers. In Kanakry's own words, "the visit was simply limited to viewing [appellee's] products for the potential purchase." In the days following that visit, Ohlman and Kanakry spoke on the telephone on several occasions. During the course of those conversations, Kanakry and appellee negotiated for the purchase and sale, respectively, of five shipments of flowers. Thus, Kanakry, either individually or as an agent of the other named defendants, became obligated to make payments to an Ohio corporation. *Id.* at 374. We find that

8.

Kanakry's visit to Ohio combined with the parties' subsequent telephone conversations constitute "transacting any business" for purposes of establishing personal jurisdiction and venue.

{¶ 24} Having found that Kanakry's conduct falls within the purview of R.C. 2307.382(A)(1) and Civ.R. 4.3(A)(1), the next issue to resolve is whether the assertion of personal jurisdiction by an Ohio court over appellants comports with the Due Process Clause of the Fourteenth Amendment.

{¶ 25} A state may assert personal jurisdiction over a nonresident defendant if the nonresident has "certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (Citation omitted.) *Hammill Mfg.* at 374, quoting *Internatl. Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945).

{¶ 26} To establish sufficient minimum contacts under the Due Process Clause, a plaintiff must demonstrate all of the following:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. (Citation omitted.) *Century Marketing Corp. v. Aldrich*, 6th Dist. Wood No. WD-02-045,

9.

2003-Ohio-1390, ¶ 13, quoting *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir.2000).

{¶ 27} In this case, the parties entered into a series of business deals that began with a face-to-face meeting in Ohio.  By all accounts, a series of phone calls followed during which the parties agreed on the particulars of each order.  As a result of those orders, some or all of the appellants became obligated to appellee.  Thus, the record demonstrates that appellee's cause of action clearly arises out of appellants' transaction of business in Ohio.  Because appellants purposely engaged in a business relationship with an Ohio businessman, they could have reasonably anticipated being brought into an Ohio court in the event that a dispute arose.  Accordingly, the trial court did not err by denying appellants' motion to dismiss the complaint for lack of personal jurisdiction and lack of venue.  Appellants' first assignment of error is not well-taken.

**Individual Liability**

{¶ 28} In their second assignment of error, appellants allege that the trial court erred in finding appellant Michael Kanakry individually liable.  Appellants argue that Warren Flower Time, LLC and Mr. Mike's M&M Garden Center, Inc. are jointly and severally liable for the unpaid invoices.   For the reasons that follow, we find that Kanakry may be held personally liable for the debt.

{¶ 29} In reviewing factual findings of a trial court, the standard of review an appellate court must apply is manifest weight of the evidence.  That is, the judgment of the trial court should not be overturned as being against the weight of the evidence if

10.

some competent and credible evidence supports that judgment. *C.E. Morris Co. v. Foley Constr. Co.,* 54 Ohio St. 2d 279, 280, 376 N.E.2d 578 (1978). Factual findings of the trial court are deferred to because the trial court is in a better position to "view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 30} As to the issue of who bears responsibility for the debt,

It is well-settled in the law of agency that an agent who disclosed neither the existence of the agency nor the identity of the principal is personally liable in his or her contractual dealings with third parties. * * * The reason for this rule is simple. The third party who deals with an agent while unaware of the existence of the principal and the agency relationship intends to deal with the agent, and relies upon the agent's ability to perform. *Dunn v. Westlake*, 61 Ohio St.3d, 102, 106, 573 N.E.2d 84 (1991).

*See also Scheid Concrete, Inc. v. McDonald,* 6th Dist. Erie No. E-07-004, 2007-Ohio-2153, ¶ 12 ("[A]n agent may be held personally liable for the principal's debt only if the principal is undisclosed, partially disclosed, or fictitious or nonexistent."). There are no facts to support the conclusion that appellant Kanakry affirmatively disclosed his agency status to appellee or that appellee knew of the existence of either business entity.

11.

**{¶ 31}** Because appellant Kanakry failed to disclose the existence of his agency status, he may be held personally liable to appellee as a matter of law. We find that the judgment of the trial court is not against the manifest weight of the evidence. Appellants' second assignment of error is not well-taken.

**{¶ 32}** For the foregoing reasons, we affirm the judgment of the Lucas County Court of Common Pleas. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                                          JUDGE
Arlene Singer, J.          

                                  _____
James D. Jensen, J.          JUDGE
CONCUR.

                                  _____
                                                          JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.